ELLEN F. ROSENBLUM
Attorney General
MARC ABRAMS  #890149
Assistant Attorney-in-Charge
CHRISTINA BEATTY-WALTERS #981634
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  marc.abrams@doj.state.or.us
          Tina.BeattyWalters@doj.state.or.us

Attorneys for Defendant


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| **LINDSEY GRAHAM**, an individual and **GLAMOUR!, LLC**, an Oregon domestic limited liability company,<br><br>          Plaintiffs,<br><br>     v.<br><br>**KATE BROWN**, in her individual capacity and her official capacity as Governor of the State of Oregon, **STATE OF OREGON**, by and through its **DEPARTMENT OF HUMAN SERVICES, CHILD WELFARE DIVISION, REBECCA JONES GASTON**, in her individual capacity and in her official capacity as Director of the Oregon Department of Human Services, Child Welfare Division, **JOEL BAXTER**, in his individual and official capacity as an employee of the Oregon Department of Human Services, Child Welfare Division, **RONIKA FERGUSON**, in her individual and official capacity as an employee of the Oregon Department of Human Services, Child Welfare Division, **OMAR RUIZ**, in his | Case No.  6:20-cv-01100-MK<br><br>**PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE** |

individual and official capacity as an employee of the Oregon Department of Human Services, Child Welfare Division, **STATE OF OREGON**, by and through its **OFFICE OF THE GOVERNOR,**
 **STATE OF OREGON**, by and through its **PUBLIC HEALTH DIVISION, HEALTH  LICENSING OFFICE**, and **SYLVIE DONALDSON**, in her individual capacity and in her official capacity as Section Manager of the Health Licensing Office of the Public Health Division of the Oregon Health Authority
,

                Defendant.

# TABLE OF CONTENTS

LR 7-1 COMPLIANCE ................................................................................... 7

MOTION TO DISMISS .................................................................................. 7

MEMORANDUM OF LAW ........................................................................... 7

INTRODUCTION ........................................................................................... 7

FACTS ............................................................................................................ 9

STANDARDS ON MOTION TO DISMISS ................................................... 13

ARGUMENT .................................................................................................. 14

    I. The State has largely re-opened and there is no basis to conclude it will be closed again, rendering the complaint moot ......................................... 14

    II. Plaintiffs have not had their right to procedural due process circumscribed (First Claim for Relief, Count 1) ........................................... 16

        A. Plaintiffs fail to show an interest prohibited by the Constitution ................... 16

        B. Plaintiffs also fail to show a deprivation of liberty or property interest, because the Executive Orders were laws of general application .............. 16

        C. Plaintiffs also fail to show a lack of any process to which they were entitled................................................................................................ 17

    III. Governor Brown's Executive Orders comport with Equal Protection (First Claim for Relief, Count 2, and Fourth Claim for Relief, Count 2)...................... 18

        A. Federal Equal Protection is not offended by the defendants' actions ............. 18

        B. Plaintiffs get no right to equal protection under the Oregon Constitution ....... 20

            1. Beauty salons are not a constitutionally recognized "class of citizens" that receive a "privilege or immunity."......................... 22

            2. Beauty salons are not a true class existing apart from the classification created by state action.............................................. 23

            3. Beauty salons are not a suspect class.............................................. 24

            4. The directive to close commercial activity was rational..................... 25

    IV. Plaintiffs have no cognizable right of substantive due process (First Claim for Relief, Count 4)................................................................... 26

    V. Plaintiffs have not been subject to an impermissible taking (First Claim for Relief Count 5 and Fourth Claim for Relief, Count 1) ........................... 27

        A.  There has been no taking under the Fifth Amendment................................. 27

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

B.  There has been no taking under Article I, section 18. ..................................... 29

VI. State law does not recognize a claim for negligent infliction of emotional distress on the facts alleged (Second Claim for Relief). ...................................... 30

VII. There has not been any qualified deprivation of property for which compensation under ORS 433.441(6) is due (Fifth Claim for Relief) ................. 30

VIII. The Complaint fails to state a claim for relief against defendants Gaston, Baxter, Ferguson, Ruiz, and Donaldson .............................................................. 32

IX. In the alternative to dismissal of the individuals, the State should be substituted for the individual defendants on all state claims that are not dismissed. ............................................................................................................ 33

CONCLUSION .................................................................................................................. 34

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## TABLE OF AUTHORITIES

**Cases**

*Alaska Center for the Environment v. U.S. Forest Service¸*189 F.3d 851, 854 (9th Cir. 1999) ................................................................................................................ 14

*Albright v. Oliver,* 510 U.S. 266, 272 (1994) ................................................. 26

*American Rivers v. National Marine Fisheries Service*, 126 F.3d 1118, 1123 (9th Cir. 1997) ................................................................................................................ 14

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009) ...................... 13

*Barren v. Washington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999) ................................................................................................................ 32

*Berry v. State Dept. of General Services,* 141 Or. App. 225, 228 (1996) ..................... 33

*Bi Metallic Inv. Co. v. State Bd. Of Equalization*, 239 U.S. 441, 445 (1915) ............... 17

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ..................... 16

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998) ................................................................................................................ 18

*Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 531 (9th Cir. 2019) ........................... 28

*Cereghino v. State Highway Commission*, 230 Or. 439, 445 (1962) ........................... 29

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) ........................... 19

*City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ................................ 15

*City of Salem v. Bruner*, 299 Or. 262 (1985) ................................................. 22

*Cox v. Oregon*, 191 Or. App. 1, 9 n. 2 (2003) ........................................ 22, 24

*Cox v. State*, 191 Or. App. 1 (2003) ................................................ 21, 23, 24, 25

*Demaray v. Dept. of Environmental Quality,* 127 Or. App. 494, 502 (1994) ............... 33

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) ................................................. 33

*F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993) ........................... 19, 20

*FDIC v. Henderson*, 940 F.2d 465 (9th Cir. 1991) ................................ 26

*Freeland*, 295 Or. at 374 ................................................................................................................ 22

*Gary v. City of Warner Robins*, 311 F.3d 1334, 1339 (11th Cir. 2002) ..................... 19

*Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ................................................. 18

Page 3

*Gunn v. Lane County*, 173 Or. App. 97, 103 (2001)........................................................ 24

*Hale v. Port of Portland*, 308 Or. 508, 525 (1989)................................................. 20, 23

*Hammond v Central Lane Communications Center*, 312 Or. 17, 22-23 (1991)......................... 30

*Harlow v. Fitzgerald,* 457 U.S. 800, 817-818, 102 S. Ct. 2727 (1982)........................... 13

*Hartman v. Acton¸* 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020) ..................................... 18, 27

*Hewitt v. SAIF*, 294 Or. 33, 43-46 (1982)........................................................ 21, 24, 25

*Hunter v. Linn-Wilsonville Sch. Dist. 3JT*, 173 Or. App. 514, 519, *rev denied*, 322 Or.
    430 (2001), *cert denied*, 534 U.S. 1130 (2002 ............................................... 29

*In re Stac Elecs. Sec. Litig*., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) ........................... 13

*Indian Land Co., LLC, v. City of Greenwood*, 478 F.3d 705, 710 (7th Cir. 2004)...................... 17

*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 (1905) ................................ 17

*Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949) ......................................... 27

*Kinross Copper Corp. v. State* 160 Or. App. 513, 519 (1999), *rev denied*, 330 Or. 71,
    *cert denied,* 531 U.S. 960 (2000)............................................................ 29

*Levine v. Diamamthuset, Inc*., 950 F.2d 1478, 1483 (9th Cir. 1991); ............................... 13

*Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S. Ct. 1148 (1982) ........................ 16

*Loretto v. Teleprompter Manhattan CATV Corp. et al.*, 458 U.S. 419, 435 (1982).................... 29

*MacPherson v. DAS*, 340  Or. 117, 129-30 (2006)................................................... 23

*Marriage of Crocker*, 332 Or. 42, 54 (2001) ...................................................... 21

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).................................................... 18

*Matthews v. Eldridge,* 424 U.S. 319, 333, 96 S. Ct. 893 (1976) ................................... 16

*MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986)................................. 13

*Michael H. v. Gerald D.,* 491 U.S. 110, 122 (1989) ............................................... 26

*Monell v. Dept. of Social Services¸*436 U.S. 658 (1978) .......................................... 32

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).................................................... 18

*Morseman v. City of Madras*, 203 Or. App. 546, 555-56 (2004) ..................................... 23, 24, 25

*Nakashima,* 344 Or. at 522 ........................................................................ 23

*Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v.
    Salerno,* 481 U.S. 739, 746 (1987)............................................................ 26

Page 4

*Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978) ........................................ 28

*Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993) ...................................... 16

*Protectmarriage.com Yes on 8 v. Bowen,* 752 F.3d 827, 836-37 (9th Cir. 2014) ........................ 15

*Reno v. Flores,* 507 U.S. 292, 302 (1993) ................................................................ 26

*Rise v. Oregon¸*59 F.3d 1556, 1563 (9th Cir. 1995) .................................................. 32, 33

*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) ........................ 13

*School Dist. No. 12 v. Wasco County*, 270 Or. 622, 627-28 (1974) ......................................... 20

*Sealey v. Hicks*, 309 Or. 387, 397 (1990) ........................................................... 21, 23

*Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) .................................................. 16

*Sherwood Sch. Dist. v. Washington Co. ESD*, 167 Or. App. 372, 385-86 (2000) ................ 22, 25

*Simons v. Beard*, 188 Or. App. 370 (2003) .............................................................. 30

*Snead v. Metropolitan Property and Ca. Ins. Co.*, 909 F. Supp. 775, 779 (D. Or. 1996) .......... 30

*State ex rel Huddleston v. Sawyer*, 324 Or. 597, 610 , *cert den.* 522 U.S. 994, 118 S. Ct. 557 (1997) ........................................................................................... 22

*State v. Clark*, 291 Or. 231 (1981) ................................................................ 20, 21, 23

*State v. Freeland*, 295 Or. 367, 369 (1983) .............................................................. 22

*Sun Savings & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987) .............................. 13

*Sweaney v. Ada County*, 119 F.3d 1385, 1391 (9th Cir. 1997) .......................................... 16

*Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 535 U.S. 302, 323 (2002) .......................................................................................... 28

*Tanner*, 157 Or. at 521 ................................................................................. 24

*U.S. v. Carolene Products Co.*, 304 U.S. 144, 154 (1938) ............................................... 25

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ................................... 33

*United States v. Florida East Coast Ry.*, 410 U.S. 294 (1973) ........................................... 17

*United States v. General Motors Corp.*, 323 U.S. 373 (1945) ............................................. 27

*United States v. Salerno*, 481 U.S. 739, 746 (1987 .................................................... 26

*Vokoun v. City of Lake Oswego*, 335 Or. 19, 27 (2002) ................................................... 29

*Wheaton v. Webb-Petett*, 931 F.2d 613, 615 (9th Cir. 1991) ............................................ 16

Page 5

*Willard v. City of Eugene*, 25 Or. App. 491 (1976) ....................................................... 29

*Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 611-12 (6th Cir. 2006).......... 17, 27

**Statutes**

ORS 270.005 ..................................................................................................................... 31

ORS 307.010(1)(b) ............................................................................................................. 30

ORS 433.411(6) ................................................................................................................. 31

ORS 433.441(6) ................................................................................................................. 30

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LR 7-1 COMPLIANCE

Counsel for defendants communicated regarding the matters that are the subject of this motion on January 20, 2021.  Plaintiffs and defendants agree they are not able to resolve this matter without the assistance of the Court.  Defendants have complied with their obligations under LR 7-1.

## MOTION TO DISMISS AND TO SUBSTITUTE

Defendants Governor Kate Brown, the Oregon Department of Human Services, Rebecca Jones Gaston, Joel Baxter, Ronika Ferguson, Omar Ruiz, State of Oregon Health Licensing Office and Sylvie Donaldson move to substitute the State of Oregon, pursuant to ORS 30.265, for the individual defendants on the Second, Third and Fourth (Counts 1 and 2) Claims for Relief, which are brought under state law.  Defendants further move to dismiss the First Claim for Relief, Counts One, Two, Four, and Five and the Second, Fourth and Fifth Claims for Relief on the ground that they fail to state a claim as to which relief can be granted.  This motion is brought pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and is based on the following *Memorandum in Support of Motion to Dismiss.*

## MEMORANDUM OF LAW

### INTRODUCTION

Viruses do not pay attention to county lines.  Viruses do not care whether you are in a hair salon, a bar, choir practice, or a tattoo parlor.  The United States has learned this the hard way over the past year.  Since March 2020, more people have died from COVID-19 in the United States than died in all of World War I, the Korean War and the Vietnam War combined.

The State of Oregon and its Governor took steps to protect the citizens of this state.  Among those steps was the subject of this lawsuit, Executive Order 20-12, which was rescinded months ago, on May 14, 2020.  Plaintiffs are a beauty salon and its owner who, at the height of the pandemic, ignored the Governor's authority and reopened for business.  Now, months later,

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

although they have suffered no consequences for their actions, they sue under various theories seeking damages and also declaratory and prospective injunctive relief related to their having closed the beauty salon at the heart of this matter for approximately six weeks, and then defying requirements that it remain closed. They declined to follow the steps the Governor took during that period to protect Oregonians, using emergency powers that governors have exercised, without controversy, for decades. They rejected doing their share in a moment when Oregon was experiencing one of the greatest crises in its history, and at a moment when the Governor was making difficult choices to prevent illness and death and to keep the people of Oregon safe.

As noted, on May 14, 2020, Governor Brown rescinded Executive Order 20-12, which is the subject of this lawsuit. A subsequent Executive Order, 20-25, permitted the resumption of much commercial activity throughout Oregon, including operation of Ms. Graham's salon ("Glamour"). In sum, plaintiffs sue over only a period of forty-two days ending with their act of knowing law-breaking.

Defendants do not minimize the impact of the steps necessary to battle COVID-19, and do not dismiss the economic harm that necessarily resulted from the international, national, and state-level public health measures imposed to help curb the disease. Plaintiffs may disagree with the Governor's choice to take difficult, decisive action to curb this pandemic, which, unchecked, would have resulted in greater widespread illness and death and also economic impact here in Oregon. But they are incorrect to say it lacks support in the framework of the United States Constitution or in Oregon law.

This Court should determine that as Executive Order 20-12 has been revoked, the requests for declaratory and injunctive relief are moot. As to the constitutional claims, because there is no right to a pre-deprivation hearing in a mass emergency, plaintiffs cannot maintain a claim for violation of procedural due process (First Claim for Relief, Count 1). Because they have not been treated differently from those similarly situated and because EO 20-12 satisfies rational review, there is no cognizable claim for a violation of equal protection (First Claim for

Page 8 -   **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Relief, Count 2, and Fourth Claim for Relief, Count 2). As there has been no deprivation of a qualifying property or liberty interest, the claim relating to substantive due process cannot stand (First Claim for Relief, Count 4). Because no property was appropriated by the government, there can be no claim for an unconstitutional taking (First Claim for Relief Count 5 and Fourth Claim for Relief, Count 1).

Plaintiffs also bring additional state law claims, which also should be rejected. The negligent infliction prong on their claim for infliction of emotional distress fails because there is no physical harm, a required element. And plaintiffs may not obtain compensation under the State's emergency powers statute because there has been no appropriation of real property.

Finally, because the Complaint simply fails to make allegations against any of the individual defendants other than the Governor that comprise the elements of any of the claims, each of them should be dismissed and, if they are not, each of them (including the Governor) should have the State substituted as a party on any state law claim that remains.

With the exception of the First Amendment claim and the abuse of process claim, and the intentional infliction prong of the emotional distress claim, which are not moved against here, the remaining claims should be dismissed.

## FACTS[1]

The plaintiffs in this action are a hair and tattoo parlor in downtown Salem, Oregon and its sole owner. Complaint ¶¶ 10, 11. Like every person and business in the United States, they have been touched by the COVID-19 pandemic.

---

[1] Defendants have cited herein to a number of documents such as the Governor's Executive Orders, and to highly respected and authoritative sources relating to the world-wide COVID-19 crisis, such as those from the World Health Organization and the tracking information from the University of Washington. None of these citations is to material that cannot be "accurately or readily ascertained," and so defendants request the Court take judicial notice of these facts. Fed. R. Evid. 201(b).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Beginning less than a year ago, COVID-19 has infected 91,492,398 people and caused the deaths of 2,082,745 people worldwide.[2]  In the United States alone, COVID-19 has caused the deaths of 412,556 people to date.[3]  Oregon's Governor, Kate Brown, was one of the first leaders in the nation to recognize the scope of the threat and react accordingly.  On March 8, 2020, Governor Brown declared a state of emergency pursuant to ORS 401.165.[4]  Since then, she issued a series of Executive Orders designed to stop the spread of the virus, protect Oregonians from its impacts, and preserve medical capacity and equipment.

Of significance here, on March 17, 2020, Governor Brown issued Executive Order 20-07,[5] which prohibited on-premises consumption of food and drink at restaurants and taverns and prohibited gatherings of more than 25 people.  Rather than order social distancing at that point, though, the Governor recommended that Oregonians maintain physical distance between themselves and other people to reduce transmission of the virus.[6]

After a beautiful March weekend that drew crowds of people to the Oregon Coast, Columbia River Gorge, and Smith Rock State Park, among other locations, where Oregonians did not adhere to the recommended physical distancing guidelines, the Governor took stronger action to slow transmission.[7]  Specifically, on March 23, 2020, the Governor issued Executive Order 20-12, which banned non-essential social gatherings, closed certain businesses, and

---

[2] World Health Organization, https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last accessed Jan. 22, 2021).

[3] University of Washington Institute for Health Metrics and Evaluation, https://COVID19.healthdata.org/projections (last accessed Jan. 22, 2021).

[4] Oregon Executive Order 20-03 at 1, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-03.pdf.

[5] Oregon Executive Order 20-07, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-07.pdf.

[6]Governor Kate Brown Statement on First Oregon COVID-19 Fatality, March 16, 2020 (available at https://www.oregon.gov/newsroom/Pages/NewsDetail.aspx?newsid=36188); Governor Kate Brown Announces New Statewide Actions on COVID-19, March 16, 2020 (available at https://www.oregon.gov/newsroom/Pages/NewsDetail.aspx?newsid=36192).
[7] Oregon Executive Order 20-12 at 2, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-12.pdf.

Page 10 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

required social distancing.[8]  Complaint ¶ 39.  By that time, cases of COVID-19 in Oregon had

increased from at least 14 as of the date Governor Brown first declared an emergency to at least

161 with five deaths.[9]  Confirmed cases continued to increase sharply across the country, and by

March 26, the United States had reportedly surpassed China for having the most confirmed cases

of COVID-19 of any country in the world.[10]  As a result of the Governor's issuance of Executive

Order 20-12, plaintiff Graham closed the Glamour on March 24th.  Complaint ¶ 45.

      For the next several weeks, the Governor continued to take action to slow the spread and

blunt the economic impact of the COVID-19 virus.  For example, she issued a moratorium on

evictions from residential and non-residential properties due to nonpayment of rent.[11]  She issued

an Executive Order preventing garnishment of federal CARES Act Recovery Rebate payments

so Oregonians can use those funds, as intended, to pay for essential needs.[12]  And she continued

the suspension of in-person instruction in primary and secondary schools as well as colleges and

universities.[13]  All the while, case counts continued to rise—although more slowly than they

otherwise would have.

      On April 27, 2020, Governor Brown began the process of re-opening the state.  She first

issued Executive Order 20-22, which allowed the resumption of non-urgent health care

---

[8] Oregon Executive Order 20-12 at 3,
https://www.oregon.gov/gov/Documents/executive_orders/eo_20-12.pdf.

[9] *Id*. at 2.

[10] McNeil, Jr., Donald G. (March 26, 2020). "The U.S. Now Leads the World in Confirmed Coronavirus Cases—Following a series of missteps, the nation is now the epicenter of the pandemic". *The New York Times*.

[11] Oregon Executive Order 20-13,
https://www.oregon.gov/gov/Documents/executive_orders/eo_20-13.pdf.

[12] Executive Order, 20-18, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-18.pdf.

[13] Executive Order 20-20, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-20.pdf;  Executive Order 20-17;
https://www.oregon.gov/gov/Documents/executive_orders/eo_20-17.pdf.

Page 11 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
      MA/jh2/Glamour XXXX CAP new federal capion

procedures.[14]  On May 1, 2020, as Governor Brown issued Executive Order 20-24 extending the state of emergency, she also announced the going-forward plans for COVID-19 testing and contact tracing, two foundational elements in the framework for reopening Oregon safely.[15]  On May 5, Governor Brown announced the limited reopening of state outdoor recreational areas, and on May 7, before plaintiffs filed this case, Governor Brown announced that she would begin a phased process of reopening parts of the Oregon economy that had been closed or limited to slow the spread of COVID-19.[16]

By that time, however, plaintiffs had decided to re-open Glamour.  On May 3, 2020, Ms. Graham announced the re-opening on her Facebook page.  Complaint ¶ 57.  Two days later, on May 5th, Graham staged an event with "hundreds of supporters" and re-opened Glamour. Complaint ¶ 64.

The next day, Graham received a letter from the State's Health Licensing Office regarding her unauthorized re-opening of Glamour.  Complaint ¶ 67.  That same day, the Oregon Department of Human Services received an anonymous complaint concerning Graham's children.  Complaint ¶ 71.  DHS investigated the complaint and found the allegations to be unsubstantiated.  Complaint ¶ 79.  Plaintiffs do not allege that any action was ever taken to close Glamour, and that no action was ever taken against either Ms. Graham's or the salon's licenses. Complaint *passim*

Then, on May 14, 2020, Governor Brown issued Executive Order 20-25.[17]  That order rescinded Executive Order 20-12, the order challenged by this lawsuit, along with other, earlier-issued orders. Executive Order 20-25 loosened some restrictions that had been in place

---

[14] Executive Order 20-22, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-22.pdf.

[15] Executive Order 20-24, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-24.pdf; https://www.oregon.gov/newsroom/Pages/NewsDetail.aspx?newsid=36528.

[16] https://www.oregon.gov/newsroom/Pages/NewsDetail.aspx?newsid=36553; https://www.oregon.gov/newsroom/Pages/NewsDetail.aspx?newsid=36579.

[17] Executive Order 20-25, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-25.pdf.

Page 12 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

statewide, including by allowing retail businesses to open while conforming to physical distancing guidelines.  And it set up a structure to reopen the Oregon economy using a phased approach that would be implemented based on local conditions.  *Id.*

Although plaintiffs were limited in their activities under Executive Order 20-12, Glamour Re-opened after a six-week hiatus, and continues to operate to this day.  There are no allegations of continued harm.  Plaintiffs admit in their Complaint that they refused to comply with EO 20-12.  Complaint ¶¶ 57, 59 ,60, 68.

## STANDARDS ON MOTION TO DISMISS

The Court's review is limited to the face of the complaint, documents referenced by the complaint and matters of which the court may take judicial notice.  *Levine v. Diamamthuset, Inc*., 950 F.2d 1478, 1483 (9th Cir. 1991); *In re Stac Elecs. Sec. Litig*., 89 F.3d 1399, 1405 n.4 (9th Cir. 1996)*;  MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir. 1986)*.*   A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)  (citing 2A J. Moore, Moore's Fed. Practice ¶12.08 at 2271 (2d ed. 1982)).  When a court considers a motion to dismiss, all allegations of the complaint are construed in the plaintiff's favor. *Sun Savings & Loan Ass'n v. Dierdorff,* 825 F.2d 187, 191 (9th  Cir. 1987).

While the Court may accept all well-pleaded factual allegations, it should ignore legal conclusions.  Bare allegations that a government official, "knew of, condoned, and willfully and maliciously agreed" to violate a plaintiff's constitutional rights for improper purpose are not entitled to the assumption of truth.  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009); *Harlow v. Fitzgerald,* 457 U.S. 800, 817-818, 102 S. Ct. 2727 (1982) (bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery).  It is the conclusory nature of the allegations that

Page 13 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

"disentitles them to the presumption of truth." *Iqbal,* 129 S. Ct. at 1951.  Under this standard, plaintiffs have failed to state a claim for relief on a number of their claims.

## ARGUMENT

**I.      The State has largely re-opened and there is no basis to conclude it will be closed again, rendering the complaint moot**

Generally, an action is mooted when the issues presented are no longer live and, therefore, the plaintiffs lack a legally cognizable interest for which the courts can grant a remedy. *Alaska Center for the Environment v. U.S. Forest Service¸*189 F.3d 851, 854 (9th Cir. 1999).  In this situation, the matter is moot.  The federal claims for relief seek (1) monetary damages, (2) a declaration that what has already occurred was unconstitutional, and (3) an injunction against unspecified future violations.[18]  They are aimed at the actions embodied in Executive Order 20-12.  That order, however, was rescinded by the issuance of Executive Order 20-25 on May 14, 2020.

There can be no monetary relief where the State's actions are fully lawful.  And, as discussed below, they are.  Nor can a declaration issue for the same reason.  That leaves plaintiffs' requests for prospective injunctive relief.  As to that, given that the salon has re-opened and there is no prohibition from the operation of the business, the claims seeking injunctive relief are moot.

There is an exception to the mootness doctrine where an issue is "capable of repetition yet evading review."  This is a limited exception that applies "only to extraordinary circumstances where (1) the duration of the challenged action is too short to be fully litigated before it ceases; and (2) there is a reasonable expectation that the plaintiffs will be subjected to the same action again."  *American Rivers v. National Marine Fisheries Service*, 126 F.3d 1118, 1123 (9th Cir. 1997).

---

[18] The state law claims which, as discussed below, cannot be adjudicated in this Court, seek only monetary relief.

Page 14 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

The burden of showing "capable of repetition" is on plaintiffs. *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Speculation is insufficient. And here, plaintiffs have not shown that there is a reasonable expectation that they will be subjected to the same action again. Although it is entirely possible there may be another wave of COVID-19, perhaps this winter, it is not a foregone conclusion that the Governor would take the same steps, particularly now that there is a vaccine, and it is being administered here in Oregon. The situation is quite different. More information is available about how and where the virus spreads and what is most effective to combat it. Testing has become more widely available. "Personal services," such as salons, are allowed to be open with safety precautions even in counties with high transmission rates, and even where other indoor activities are closed. *See* https://sharedsystems.dhsoha.state.or.us/DHSForms/Served/le3461.pdf. Plaintiffs' conclusory contentions that the Governor will re-institute identical restraints on businesses at an unknown time in the future, based on an unknown recurrence of disease, are not sufficient to carry their burden.

It also should be noted that even if the Court were inclined to give credence to plaintiffs' forecasts, this is not the kind of "exceptional situation" in which "future repetitions of the controversy will necessarily evade review as well." *Protectmarriage.com Yes on 8 v. Bowen,* 752 F.3d 827, 836-37 (9th Cir. 2014). If, hypothetically, a new closure order was issued this Spring under new circumstances, a new suit specific to the wording of such an order and specific to the facts on the ground as of that date would not evade review.[19]

The current situation does not fit within the "capable of repetition" exception to mootness. Accordingly, the First Claim for Relief, Counts 1, 2, 4, and 5; and the Fourth Claim for Relief, Counts 1 and 2, to the extent they seek only injunctive relief, should be dismissed.

---

[19] Indeed, this Court has dealt with several such cases, including *Open Our Oregon v. Brown*, 2020 WL 2542861 (D. Or. May 19, 2020), and *Oregon Restaurant and Lodging Association v. Brown*, 2020 WL 6905319 (D. Or. Nov. 24, 2020).

Page 15 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

II.   **Plaintiffs have not had their right to procedural due process circumscribed (First Claim for Relief, Count 1).**

Plaintiffs claim (First Claim for Relief, Count 1) that their right of procedural due process has been violated.  They are incorrect.

A procedural due process claim has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process."  *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008); *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  To establish a due-process violation, plaintiff must first prove a deprivation of a constitutionally protected right.  *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S. Ct. 1148 (1982).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Matthews v. Eldridge,* 424 U.S. 319, 333, 96 S. Ct. 893 (1976).  Plaintiffs fail to state a claim because their allegations fail to satisfy the three elements.

A.   **Plaintiffs fail to show an interest prohibited by the Constitution.**

An individual may be liable under Section 1983 on a procedural due process theory if the complaining party has a property or liberty interest meriting constitutional protection.  *Wheaton v. Webb-Petett*, 931 F.2d 613, 615 (9th Cir. 1991).  Alleged violations of state law are insufficient to sustain a Section 1983 action because a plaintiff must demonstrate a violation of a clearly established *federal* right.  *Sweaney v. Ada County*, 119 F.3d 1385, 1391 (9th Cir. 1997).

Plaintiffs appear to suggest that requiring closure of business generally, without prior process, offends the Constitution.  Complaint ¶¶ 83, 84.  They appear to base this on their holding licenses to operate.  Complaint ¶¶ 26, 83.  Defendants assume plaintiffs claim as their liberty or property interest a "right" to operate their businesses.  But such property interests are created by state law, and plaintiffs —collectively or individually— have not pointed to such a state-created entitlement.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (interests crated by states, not by federal law).

B.   **Plaintiffs also fail to show a deprivation of liberty or property interest, because the Executive Orders were laws of general application.**

Page 16 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Regardless, even if such a right exists, it is not now and never has been absolute.  In other words, there has been no deprivation.  The right to operate a business, to whatever extent it exists, is not an "unfettered freedom."  *Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 611-12 (6th Cir. 2006).  A person (or business) affected by a law of general applicability has no due process right to a hearing because a law's generality "provides a safeguard that is a substitute for procedural protection."  *Indian Land Co., LLC, v. City of Greenwood,* 478 F.3d 705, 710 (7th Cir. 2004); *Bi Metallic Inv. Co. v. State Bd. Of Equalization*, 239 U.S. 441, 445 (1915); *United States v. Florida East Coast Ry.*, 410 U.S. 294 (1973).

That is even more true here, during this pandemic.  The Supreme Court has long recognized the power of states "to enact quarantine laws and health laws of every description" pursuant to their police power. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 (1905)  (upholding constitutionality of state law mandating vaccination of all adults and noting "that the state may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety").  In *Jacobson*, the Supreme Court reiterated the fundamental principle that "persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state." *Id*. at 26.  It is beyond argument that the Governor's Executive Orders have been related to stemming the spread of the virus.

It should also be noted that nowhere in the Complaint is there alleged any actual step being taken to revoke or suspend plaintiffs' licenses.

Because plaintiffs do not identify a properly qualifying denied interest, and because the Executive Orders were unarguably laws of general application, plaintiffs do not show a cognizable deprivation.

### C.  Plaintiffs also fail to show a lack of any process to which they were entitled.

Finally, plaintiffs fail to show a lack of any process to which they are entitled.

Page 17 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

The essence of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[W]hat procedures the Due Process Clause requires in any given case is a function of context." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998). Due process "is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Due process permits post-deprivation process "where a State must act quickly or it would be impractical to provide pre-deprivation process * * *." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).

Plaintiffs do not identify the process they believe should have occurred. As to the closure of the business, they do not allege they ever approached government to seek any kind of process. This situation is clearly not one where government has taken a specific action against a specific business, such as proposing to cancel a liquor license. It would appear that plaintiffs are suggesting that the State owes *every* business in Oregon a hearing because of the pandemic. That is obviously not feasible. It is also not required under procedural due process. *Hartman v. Acton*, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020), \*7-8, 10 (pre-deprivation hearings not required).

For these reasons, under the facts alleged and about which this Court can take judicial notice, plaintiffs have failed to state a claim for deprivation of procedural due process rights.

**III.    Governor Brown's Executive Orders comport with Equal Protection (First Claim for Relief, Count 2, and Fourth Claim for Relief, Count 2).**

### A.    Federal Equal Protection is not offended by the defendants' actions

Plaintiffs assert that the Governor's rescinded Executive Order 20-12 violated the Equal Protection Clause by making distinctions in treatment among barber shops. This is simply inaccurate, and the inaccuracy is clear on the face of Executive Order 20-12.

It is also belied by the Complaint itself. In Paragraph 2, plaintiffs allege that the government, generally, "forced small businesses to shut their doors." Complaint ¶ 2. Plaintiffs concede that Executive Order 20-12 required barber shops and hair salons to cease operations

Page 18 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

MA/jh2/Glamour XXXX CAP new federal capion

immediately.  Complaint ¶ 39.  *All* barber shops and hair salons.  *Id.*  They contend other cosmetology businesses —those operating in senior centers and long-term care facilities— did not have to close.[20]  Complaint ¶ 40.  They then assert some kind of equivalency as to which they claim the differential treatment rises to a level of a constitutional equal protection violation.  *Id.*

"The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). This test is "highly deferential" to the government.  *Gary v. City of Warner Robins*, 311 F.3d 1334, 1339 (11ᵗʰ Cir. 2002) .  The general rule gives way only "when a statute classifies by race, alienage, or national origin" or when it infringes a fundamental right.  *City of Cleburne*, 473 U.S. at 440; *see, e.g., F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993)  (holding that in the "social and economic policy" realm, a classification that "neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.").  It is only then that strict scrutiny applies.  Such a claim is not presented here.

Plaintiffs do not allege that they were discriminated against on the basis of their membership in a protected class or on the basis of a fundamental right.

The Executive Order easily satisfies rational basis review.  It was expressly designed to reduce the spread of COVID-19 in Oregon.  It makes rational distinctions between businesses because different types of businesses pose different types and degrees of risk.  The Court should easily discern the difference between a general commercial enterprise with persons coming from all over and a discrete, on-site service for persons in assisted living already to some degree cohabiting.

---

[20] Although defendants must accept the allegations in the Complaint as true, this allegation is demonstrably false.  See Executive Order 20-12 at Paragraph 2.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Under rational basis review, the State's "choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data" particularly where it "must necessarily engage in a process of line-drawing." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. at 315-16 (1993) . Here, however, the State's choice actually is supported by public health evidence. The Governor's goal in issuing her Executive Orders relating to COVID-19 was and is to protect the lives and health of Oregonians by stemming the spread of the pandemic ravaging much of the planet. The decisions the Governor has made — and continues to make— to keep Oregonians safe are rationally related to this goal. Accordingly, the rational basis review test is satisfied, and plaintiffs' Equal Protection claims fail.

### B.  Plaintiffs get no right to equal protection under the Oregon Constitution.

Nor can plaintiffs recover under Article I, section 20 of the Oregon Constitution, as no state equal protection law is offended. Article I, section 20, of the Oregon Constitution provides:

> "No law shall be passed granting to any citizen or class of citizens privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."

Oregon courts previously interpreted Article I, section 20 as providing the same protection as the federal Equal Protection Clause. *See, e.g., School Dist. No. 12 v. Wasco County*, 270 Or. 622, 627-28 (1974). In *State v. Clark*, 291 Or. 231 (1981), however, the Oregon Supreme Court took a different approach, interpreting Article I, section 20 independently from the case law developed under the federal constitution. The first question under current Article I, section 20 jurisprudence is whether the statutes involve a privilege or immunity that is distributed in such a way that disparately affects a "true class." A true class is one whose members share characteristics that they have apart from the challenged statute itself, *i.e.*, they share "antecedent personal or social characteristics or societal status." *Hale v. Port of Portland*, 308 Or. 508, 525 (1989). *See also Clark*, 291 Or. at 240.

Page 20 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

The level of scrutiny will depend on the nature of the class.  At one end of the spectrum are those classes identified by fundamental antecedent personal characteristics like race or gender.  *E.g.*, *Hewitt v. SAIF*, 294 Or. 33, 43-46 (1982); *Clark*, 291 Or. at 240-41.  A statute classifying on those grounds is "suspect" and must, at a minimum, reflect real rather than stereotypical differences between those who receive and those who are denied the benefit in question.  *Hewitt,* 294 Or. at 46-47, 49-50.  At the other end of the spectrum are those distinctions created by the challenged legislation itself, which are not considered classes at all for purposes of Article I, section 20.  *Sealey v. Hicks*, 309 Or. 387, 397 (1990); *Clark*, 291 Or. at 240-43.  Laws making that type of distinction do not violate Article I, section 20.  In between are statutes that disparately affect a "true class" that is not a "suspect" class.  Such statutory classifications are subject to "rational basis" scrutiny.  *In re Marriage of Crocker*, 332 Or. 42, 54 (2001).

The Oregon Supreme Court has provided little guidance on what constitutes a violation of Article I, section 20.  In his concurrence in *Cox v. State*, 191 Or. App. 1 (2003), Judge Schuman attempted to provide an explanation of what he conceded was "the somewhat confusing state of Article I, section 20 jurisprudence."  *Id.* at 5.  After reviewing *Hewitt*, *Tanner v. OHSU*, 157 Or. App. 502 (1998), and *Crocker and Crocker*, 332 Or. 42 (2001), Judge Schuman concluded that the proper analysis asked four questions:

(1) Does the government action provide a privilege or immunity to a person based on that person's membership in a class?

(2) Is the class a true class?

(3) Is it also a suspicious class?

(4) Is the governmental action based on stereotype or prejudice instead of a genuine correlation between the trait on which the classification is based and the benefits or burden conferred?

Page 21 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

If the answer to *all* four questions is yes, the government action violates § 20. Otherwise, the action does not violate section 20 if it rationally furthers some lawful governmental objective—even one that the lawmakers did not intend. *Id.* at 12. *See also Sherwood Sch. Dist. v. Washington Co. ESD*, 167 Or. App. 372, 385-86 (2000).  Only laws that disparately treat a "true class" may violate Article I, Section 20. Id. at 520 (*citing State ex rel Huddleston v. Sawyer*, 324 Or. 597, 610 , *cert den.* 522 U.S. 994, 118 S. Ct. 557 (1997).

In the instant matter, the answer to *every one* of these questions is "no."

### 1.  Beauty salons are not a constitutionally recognized "class of citizens" that receive a "privilege or immunity."

The prohibition against granting unequal privileges or immunities in Article I, section 20 applies to privileges to any individual citizen or to any class of citizens. *Tanner*, 157 Or. App. at 520.  Plaintiffs implicitly suggest hair salons are such a class.  They are not.

Article I, section 20 requires that privileges apply on the same terms to all classes. *State v. Freeland*, 295 Or. 367, 369 (1983). The state must not distribute benefits or burdens in a "haphazard, standardless manner." *Cox v. Oregon*, 191 Or. App. 1, 9 n. 2 (2003) (Schuman, J. concurring) (*citing City of Salem v. Bruner*, 299 Or. 262 (1985); *Freeland*, 295 Or. at 374). "Haphazard" or "standardless administration" occurs when a privilege "is chosen *ad hoc* without striving for consistency among similar cases." *Freeland*, 295 Or. at 374. The court distinguishes haphazard administration from "impermissible classification," which is "a systemic practice of following one or the other procedure in identifiable types of cases or circumstances" that "reflects some articulable policy toward classes of cases." *Id.*

Plaintiffs must show that the state criteria for the closure of businesses were impermissible or inconsistently applied. *Freeland*, 295 Or. at 375, 377.[21]

---

[21] In fact, the standard does not even require neutral application of these criteria.  Equal protection does not go so far as to require previously stated standards as long as no discriminatory practice or illegitimate motive is shown and the use of discretion has a defensible explanation. *Dickinson v. Davis*, 277 Or. 665, 673 (1977). The constitution only requires that "individuals in like circumstances will be treated alike," *either* through predetermined rules or

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Unfortunately for plaintiffs, they were not.  In arriving at the decision to close grooming businesses along with many, many others, the State applied pre-existing, neutral criteria.  Those factors related purely to health and safety, based on the potential for transmission of the disease.  Plaintiffs will not be able to show otherwise.[22]

Plaintiffs have failed to demonstrate that Article I, section 20 is implicated in the defendants' actions.

### 2.   Beauty salons are not a true class existing apart from the classification created by state action.

To bring a claim under Article 1, section 20, persons seeking relief must "qualify as a class who share common characteristics that exist apart from the criteria on which the governmental choice is made." *Nakashima,* 344 Or. at 522, *quoting MacPherson v. DAS*, 340 Or. 117, 129-30 (2006).  A "true class" shares "antecedent personal or social characteristics or societal status." *Hale v. Port of Portland*, 308 Or. 508, 525 (1989); *see also Clark*, 291 Or. at 240.

By contrast, a non-true class derives their identity from the challenged law itself. Article I, section 20's guarantee of equal treatment does not apply to non-true classes, because the state cannot disparately affect a class that exists only as a creation of the state. *Morseman v. City of Madras*, 203 Or. App. 546, 555-56 (2004).  Article I, section 20 "simply has no relevance to such classification schemes." *Cox*, 191 Or. App. at 8-9 (Schuman, J. concurring) citing *Sealey v. Hicks*, 309 Or. 387, 397, *cert. den.*, 498 U.S. 819 (1990). If the plaintiff belongs to a non-true class, proceeding to the next step of analysis is unnecessary. *Id.* At 10.

By definition, there is no class of beauty salons. Beauty salons are a non-true class to the extent that class is created by a licensing scheme of the State.  Beauty salons do not exist as a

---

guidelines or consistency in practice. *Freeland*, 295 Or. at 367 (*quoting Dickinson*, 277 Or. 665) (discretion to mitigate sanctions must have explainable reasons)).

[22] The comparison to any services in assisted living homes is inapt.  Such services are part of a sealed environment for a specific population of particularly susceptible individuals, as the death rates for those of advanced years and with complicating conditions have clearly demonstrated.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

class inherently separate from others involved in commerce and/or in the on-site provision of services, including, for example, attorney's offices or shoe stores.   The "class," such as it is, is precisely the kind of governmentally created class that Article I, section 20 does not recognize.

The analysis should end here.

### 3.  Beauty salons are not a suspect class.

Under Article I, section 20, Oregon courts distinguish between true classes that are suspect and non-suspect.  Disparate treatment of a non-suspect class is subject to a lower level of scrutiny than a suspect class and is less likely to violate the constitution. *Tanner*, 157 Or. at 521.

Beauty salons are not a suspect class, if they are a class at all.

Even if beauty salons were a true class —they are not— they would not be a suspect class.  In defining a "suspect class," "the focus is on characteristics that are historically regarded as defining distinct, socially recognized groups that have been the subject of adverse social or political stereotyping or prejudice." *Morseman v. City of Madras*, 203 Or. App. 546, 557 (2006) (*citing Gunn v. Lane County*, 173 Or. App. 97, 103 (2001); *Tanner*, 157 Or. App. at 522-23).  A class based on geographical residence, for example is not suspect. *Cox v. Oregon*, 191 Or. App. 1 (2003). Beauty salons and their owners are not either.

In *Hewitt v. SAIF*, 294 Or. 33 (1982), the court announced that, in analyzing issues of purported discrimination under Article I, section 20, "when classifications are made on the basis of gender, they are, like racial, alienage and nationality classifications, inherently suspect." *Id.* at 46.  However, "the focus is not necessarily on immutability of the common, class-defining characteristics but on the fact that they are historically regarded as defining distinct, socially recognized groups that have been the subject of adverse or social or political stereotyping or prejudice." *Cox*, 191 Or. App. at 13-14 (Schuman, J. concurring) (citing *Hewitt*, 157 Or. App. at 522-23).

In *Hewitt*, the court held that the denial of death benefits to the male plaintiff violated Article I, section 20.  *See* 294 Or. at 50.  The statute at issue distinguished eligibility for death

MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

benefits without justification between an unmarried woman upon the death of an unmarried man with whom she cohabited for over one year and an unmarried man in a parallel situation. *Id.* at 35.

By contrast, neither statute not any expressed basis for the State's action can fairly lead to the conclusion that Glamour was asked to close because of such a suspect classification.  Indeed, plaintiffs fail to identify what class to which they claim to belong.  Graham does not assert the actions taken are because she is a woman and Glamour! has no defining suspect characteristics.

### 4.    The directive to close commercial activity was rational.

Unless the action of the State is the result of a suspect classification, disparate impact on a class does not implicate a violation of Article 1, section 20 when there is a rational basis for the state action. *Sherwood Sch. Dist.*, 167 Or. App. at 385-86. The "rational relationship" test is "a well-settled part of Oregon equality law" for ordinary discrimination. *Cox*, 191 Or. App. at 12 n. 5. The Supreme Court uses a balancing test approach to "class legislation." *Hewitt*, 294 Or. at 37

State action satisfies the rational basis standard "as long as it is tied to a legitimate governmental purpose, regardless of whether that purpose is set out in the statute or legislative history, or was even considered by the legislature." *Morseman*, 203 Or. App. at 559. An action will pass the rationality review if "the question is at least debatable." *Cox*, 191 Or. App. at 15 (Schuman, J. concurring) (*quoting U.S. v. Carolene Products Co.*, 304 U.S. 144, 154 (1938)). This standard is highly deferential.

The State's decision, as set forth above, was based on a number of genuinely neutral criteria, including the health of the citizens of Oregon.  It was mirrored by governors is virtually every other state of the union, not to mention leaders all over the world.

As there was a rational basis for the State's actions, there can be no Article I, section 20 violation.

Page 25 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## IV.    Plaintiffs have no cognizable right of substantive due process (First Claim for Relief, Count 4).

"The concept of 'substantive due process,' * * * forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  The Supreme Court has repeatedly noted that the doctrine is limited to the vindication of the most fundamental liberty interests.  *See, e.g., Albright v. Oliver*, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right of bodily integrity."); *Reno v. Flores,* 507 U.S. 292, 302 (1993) (substantive due process "forbids the government to infringe certain 'fundamental' liberty interests); *Michael H. v. Gerald D.,* 491 U.S. 110, 122 (1989) (substantive due process requires that the asserted right be fundamental and traditionally protected by our society).

The allegations by plaintiffs do not rise to the level of recognized "fundamental" rights. The Complaint is devoid of any assertion that plaintiffs have completely lost the ability to conduct their business in light of the re-opening that is taking place.  In any event, a "business" is not protected by substantive due process.[23]  In order to find such a violation, Ms. Graham would need to allege and prove that she has been unable to pursue her *profession* and that this inability was due to arbitrary and unreasonable government action.  In *FDIC v. Henderson*, 940 F.2d 465 (9th Cir. 1991), the court held that a plaintiff could sustain a substantive due process claim that she was unable to pursue the *occupation* of her choice if she showed (1) that she was unable to pursue a job in his profession, and (2) that the inability was due to arbitrary and unreasonable government action.  *Id*. at 474.  However, this is not alleged by Ms. Graham.[24]

---

[23] Licenses issued by government are sometimes considered the subjects of due process, *e.g., Gambee v. Williams*, 971 F. Supp. 474, 477 (D. Or. 1997), however in this case, no license was impacted.  Glamour continues to operate.  Regardless, salons are not licensed; beauticians are.  ORS 690.005-.225.  It is not alleged that any license was suspended or any specific action taken against a license

[24] Plaintiffs do allege there was an "effort" to prevent them from earning a living.  Complaint ¶ 110.  But they do not allege they were prevented from doing do.  Indeed, after plaintiffs

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

In a decision last year, a federal court in Ohio rejected a claim very similar to the ones at bar.  In *Hartman v. Acton*, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020), plaintiff, owner of a bridal shop, sued because her store was closed due to Ohio's stay-at-home order.  Among the claims she asserted was a violation of her substantive due process right.  The Court rejected her claim, noting that even if there is a property interest in an ongoing business, it is not an "'*unfettered* freedom' and was still subject to a state's regulatory framework." *Id.* at *7 (*citing Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611-12 (6th Cir. 2006) ).  Plaintiffs here do not sufficiently attach their alleged substantive due process right to the circumstances in which they find themselves.

It should also be noted that most of the states in the United States took similar steps.  This is the clearest demonstration that Oregon has not acted intemperately or unusually.  Indeed, by early April, *every* state save for North Dakota, South Dakota, Nebraska and Arkansas had closed non-essential businesses.[25]

There is no violation of any right of substantive due process under these circumstances.

**V.      Plaintiffs have not been subject to an impermissible taking (First Claim for Relief Count 5 and Fourth Claim for Relief, Count 1).**

      **A.  There has been no taking under the Fifth Amendment.**

Plaintiffs contend their business property was taken by the Governor's rescinded Executive Orders and, as a result, an injunction and declaration should issue.  They are wrong for several reasons, not the least of which is that neither form of relief changes anything as to a rescinded order.

Plaintiffs may be expected to cite as their only support to World War II-era authorities in which the United States military formally condemned and then physically occupied several properties during the war.  *Kimball Laundry Co. v. United States*, 338 U.S. 1 (1949); *United*

---

voluntarily ceased operations from March 24, through May 5, 2020, and then re-opened, Complaint ¶¶ 45, 46, 64, there is no allegation that she ever closed again.

[25] https://abcnews.go.com/Health/states-shut-essential-businesses-map/story?id=69770806. ABC News, April 3, 2020.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*States v. General Motors Corp.*, 323 U.S. 373 (1945).  But those cases, unlike this one, involved physical occupation.  And *whether* a taking occurred was undisputed.  The only question was the compensation due.

Fifth Amendment takings jurisprudence has evolved in the more than 70 years since those cases were decided.  Precedents involving physical takings are not controlling in the regulatory taking context.  *See Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 535 U.S. 302, 323 (2002) (so stating and declining to find a 32-month moratorium on development to necessarily be a taking).  Although it is unclear whether plaintiffs assert a *per se* taking or taking under *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104 (1978), there is clearly no *per se* taking here.  *Per se* takings are limited to "permanent physical invasions" or complete deprivations of "all economically beneficial use" of private property.  *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 531 (9th Cir. 2019) (internal citations omitted).  Neither has occurred here.

Therefore, the balancing test in *Penn Central* applies.  Application of the factors here cannot support a Fifth Amendment claim.  The factors are the "economic impact of the regulation on the claimant," the "extent to which the regulation has interfered with distinct investment-backed expectations," and "the character of the government action." *Id*. at 124.  Although the State cannot deny that the restrictions in business activity have caused a negative economic impact, the restrictions were temporary.  Plaintiffs do not allege that they have been closed at any time since May 5, 2020.  And significantly, the character of the government action justifies the temporary limitation of business activity.  The Governor's Executive Orders are designed to protect the health and lives of Oregonians in the midst of a global pandemic.  The exercise of the Governor's police power during this time is fully justified and consistent with the Fifth Amendment.  No taking has occurred.

In any event, plaintiffs' claim for extraordinary preliminary relief must fail.  The Fifth Amendment does not prohibit government from taking private property; it only requires that just

Page 28 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

compensation be paid.  Plaintiffs will have no support for the entry of equitable relief to prevent the implementation of a government regulation under the Fifth Amendment.   The claim fails and should be dismissed for all these reasons.

**B.  There has been no taking under Article I, section 18.**

The same outcome results from an allegation of a "taking" under the Oregon Constitution, Article I, section 18.  That section states in pertinent part:

> Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation.

As plaintiffs presumably concede, the salon was never physically seized.  They were never barred from entering it.  Closing a business is not using a business.  To be a taking, the property must be appropriated for *public use*. *Vokoun v. City of Lake Oswego*, 335 Or. 19, 27 (2002); *Willard v. City of Eugene*, 25 Or. App. 491 (1976).  In *Willard*, the court concluded that in situations where there is no appropriation for public use, a "takings" claim does not lie.[26]

As an additional point, plaintiffs, quite simply, do not own the property in question, meaning they cannot recover on a takings claim. *Hunter v. Linn-Wilsonville Sch. Dist. 3JT*, 173 Or. App. 514, 519, *rev denied*, 322 Or. 430 (2001), *cert denied*, 534 U.S. 1130 (2002); *Kinross Copper Corp. v. State* 160 Or. App. 513, 519 (1999), *rev denied*, 330 Or. 71, *cert denied,* 531 U.S. 960 (2000) ("An owner cannot maintain an action for loss of a property right that it did not ever have.").  A lease does not constitute ownership that can be "taken." Plaintiffs are only lessors of a commercial space owned by the City of Salem.  Complaint ¶ 118.  Accordingly, they have no right to "possess, use and dispose of it." *Cereghino v. State Highway Commission*, 230 Or. 439, 445 (1962). *Loretto v. Teleprompter Manhattan CATV Corp. et al.*, 458 U.S. 419, 435 (1982).

---

[26] There is not even an allegation of damage and, regardless, mere damage to property does not provide a sufficient basis for a takings claim. *Coast Range Conifers LLC v. State*, 339 Or. 136 (2995); *Hawkins v. City of LaGrande*, 315 Or. 57 (1992); *Willard v. City of Eugene*, 25 Or. App. 491 (1976).

Page 29 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Accordingly, this is not a matter that should proceed beyond this motion.

## VI. State law does not recognize a claim for negligent infliction of emotional distress on the facts alleged (Second Claim for Relief).

Generally speaking, there is no claim in Oregon for negligent infliction of emotional distress ("NIED"). *Snead v. Metropolitan Property and Ca. Ins. Co.*, 909 F. Supp.  775, 779 (D. Or. 1996).  Absent physical injury, caused by defendants, there can be no such claim. *Hammond v Central Lane Communications Center*, 312 Or. 17, 22-23 (1991); *Simons v. Beard*, 188 Or. App. 370 (2003).  Plaintiffs do not allege physical injury.  They have not stated a claim for NEID and that prong of the Second Claim for Relief should be dismissed.

## VII. There has not been any qualified deprivation of property for which compensation under ORS 433.441(6) is due (Fifth Claim for Relief).

Under the Oregon emergency statutes, "[w]hen real or personal property is taken under power granted by [chapter 433], the owner of the property shall be entitled to reasonable compensation from the state."  ORS 433.441(6)

Plaintiffs claim an entitlement under that statute.  The problem with their contention is that nowhere in the Complaint do they identify personal property that has been taken, and nowhere do they identify real property that has been taken.[27]  Indeed, none has.  Plaintiffs do not allege that any agent of the state has seized corporeal property.

Defendants conclude that plaintiffs must therefore be referring to the lease for the salon and its value for the period the salon was closed.  Plaintiffs incorporate by reference into this claim for relief language in Paragraph 118 that "preventing Plaintiffs from using the property Plaintiff leases from the city of Salem * * * constitutes a taking of private property * * *" and in Paragraph 138 that defendants actions "constitute an unconstitutional taking of the Plaintiff's [sic] property, in particular the constitutionally protected right to use the property Plaintiffs lease from the city of Salem and Plaintiffs; property right in their respective licenses * * *."

---

[27] The Complaint is unclear.  If plaintiffs are referencing their licenses, however, those are obviously not real property.

Page 30 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

A lease, however, is *not* real property.  In the Oregon Revised Statutes chapter on revenue and taxation, "real property" is defined in ORS 307.010(1)(b) as:

> (b) "Real property" includes:
> (A) The land itself, above or under water;
> (B) All buildings, structures, improvements, machinery, equipment or fixtures erected upon, above or affixed to the land;
> (C) All mines, minerals, quarries and trees in, under or upon the land;
> (D) All water rights and water powers and all other rights and privileges in any way appertaining to the land; or
> (E) Any estate, right, title or interest whatever in the land or real property, less than the fee simple.

In the chapter on State lands, in ORS 270.005, the definition is simply, "(3) "Real property" means all real property together with any and all improvements thereon."

In the chapter on Public Facilities, Contracting, and Insurance, ORS 278.005(11) identifies real property as: "the land and all buildings, structures, improvements, machinery, equipment or fixtures erected on, above or under the land the title of which is vested in the State of Oregon, or is under the control of the state through a lease purchase agreement, installment purchase, mortgage or lien. 'Real property' does not include any paving, roadways, tunnels, bridges, bike paths, sidewalks and other related improvements which may be excluded by policy of the department."

Although these definitions differ, the one thing they have in common is that they are all limited to a description of actual, *physical* land, its component parts, and its improvement.  They do not include leases.  Although there are no decisions specifically under ORS 433.411(6), given the consistency of the omission of leases or other temporary possessory interests in any definition of real estate, it should be clear the Legislative Assembly did not intend to include leases as compensable under the public health emergency statute.

This claim should be dismissed.

Page 31 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**VIII.  The Complaint fails to state a claim for relief against defendants Gaston, Baxter, Ferguson, Ruiz, and Donaldson**

Regardless of the theoretical sufficiency of the legal allegations in the Complaint, the Complaint completely fails to set forth claims for relief against any of the defendants except for Governor Brown.

Rebecca Jones Gaston is identified as the Director of the Child Welfare Division of the Oregon Department of Human Services in Paragraph 16 of the Complaint.  She is never mentioned again.  There is no liability under a *respondeat superior* theory for alleged federal Constitutional violations.  *See Rise v. Oregon¸*59 F.3d 1556, 1563 (9th Cir. 1995), *citing Monell v. Dept. of Social Services¸*436 U.S. 658 (1978).  "Liability under Section 1983 must be based on the personal involvement of the defendant."  *Barren v. Washington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999).  And, as argued below, each defendant *including* the Governor is entitled to be substituted out on the state law claims, which would eliminate Ms. Jones Gaston as a party to this matter.

Joel Baxter is identified as an employee of the Child Welfare Division of DHS in Paragraph 17.  He is, thereafter, only mentioned twice.  In Paragraphs 71 and 75, he is mentioned as having *received* an anonymous complaint, consulted with Ferguson, and requested a response from plaintiff Graham.  That is the extent of his "improper" activity: performing ministerial tasks.  He is not alleged to have made any statement, reached any conclusion, taken any further action.  How these skimpy allegations could constitute a violation of plaintiffs' equal protection, be a taking, inflict emotional distress, or be an abuse of process is not explained.   Similarly, Ronika Ferguson is also identified as an employee of the Child Welfare Division of DHS in Paragraph 18, and is jointly mentioned, with Mr. Baxter, as requesting a response from Ms. Graham in Paragraph 75.  There is no more basis to hold her in this suit than there is for Mr. Baxter.

In Paragraph 19, Omar Ruiz is identified as an employee of the Child Welfare Division of DHS.  Then, in Paragraphs 76 through 79, he is described as having Ms. Graham's case assigned

MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

to him, as making contact and interviewing her, and as finding the claims to be *unsubstantiated*. In other words, Ms. Graham is apparently suing Mr. Ruiz for *agreeing* with her. Nothing Mr. Ruiz is alleged to have does is actionable.

Finally, Sylvie Donaldson is identified in Paragraph 20 as "Section Manager of the Health Licensing Office of the Public Health Division of the Oregon Health Authority." She is never mentioned again. No actions are attributed to her. As with Ms. Jones Gaston, she would seem to be included in this matter on a theory of supervisory liability which, again, is unactionable. *Rise v. Oregon*¸59 F.3d 1556, 1563 (9th Cir. 1995).

Accordingly, none of these five individuals has committed acts recognizable as violating a federal right. They also have, as noted in the section below, the right to be substituted out of the state law claims. They should not remain as parties to this action.

IX.    **In the alternative to dismissal of the individuals, the State should be substituted for the individual defendants on all state claims that are not dismissed.**

In federal court, claims brought under pendent or supplemental jurisdiction pursuant to state law theories are decided by application of the law of the state in which they arise. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), *citing Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under the Oregon Tort Claims Act ("OTCA"), when a suit arises out of the act or omission of an officer, employee or agent of a public body within the course and scope of his official duties, the public body is substituted as the defendant. ORS 30.265(3); s*ee also Demaray v. Dept. of Environmental Quality,* 127 Or. App. 494, 502 (1994) ("It appears from plaintiff's complaint that the individually named defendants were acting at all relevant times within the course and scope of their employment. Therefore, those claims must be 'against the public body only.'"); *Berry v. State Dept. of General Services,* 141 Or. App. 225, 228 (1996).

Pursuant to the OTCA, the Court should substitute the State of Oregon for Governor Brown, Ms. Gaston, Mr. Baxter, Ms. Ferguson, Mr. Ruiz, and Ms. Donaldson as the proper defendant for the state law Claims (infliction of emotional distress, wrongful use of civil proceedings/abuse of process, and the state law takings claims in this action). ORS 30.265(1).

Page 33 -  **PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**
    MA/jh2/Glamour XXXX CAP new federal capion

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## CONCLUSION

The Governor is committed to protecting the citizens of Oregon.  The steps she has taken have been working.  Oregon has seen one of the lowest rates of death from COVID-19 in the nation *not* because the risk was not real, but because the Governor acted before the crisis fully hit our state, and our people rose to the occasion, which significantly reduced the potential for people to be exposed to the virus.   That plaintiffs may have customers willing —during a pandemic— and confident enough in the business's safety to come back to their businesses at all is in major part due to the steps taken by the Governor and the collective sacrifices of Oregonians.  There are no shortcuts out of this pandemic.  The careful, data-driven approach that has served Oregon well in controlling this pandemic should continue.

For the foregoing reasons, defendants' partial motion to dismiss and to substitute should be granted.

DATED January __28__, 2021.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/Marc Abrams*_____
MARC ABRAMS #890149
Assistant Attorney-in-Charge
CHRISTINA BEATTY-WALTERS #981634
Senior Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
marc.abrams@doj.state.or.us
Tina.BeattyWalters@doj.state.or.us
Of Attorneys for Defendants

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000