**ELLEN F. ROSENBLUM**
Attorney General
**MARC ABRAMS  #890149**
**Assistant Attorney-in-Charge**
CHRISTINA BEATTY-WALTERS #981634
Senior Assistant Attorney General
Department of Justice
**100 SW Market Street**
**Portland**, **OR 97201**
Telephone: **(971) 673-1880**
Fax: **(971) 673-5000**
Email:  **marc.abrams@doj.state.or.us**
Email:  tina.beattywalters@doj.state.or.us
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LINDSEY GRAHAM,** an individual and **GLAMOUR!, LLC,** an Oregon domestic limited liability company<br><br>             Plaintiffs,<br><br>         v.<br><br>**KATE BROWN,** in her individual capacity and her official capacity as Governor of the State of Oregon, **STATE OF OREGON,** by and through its **DEPARTMENT OF HUMAN SERVICES, CHILD WELFARE DIVISION, REBECCA JONES GASTON,** in her individual capacity and in her official capacity as Director of the Oregon Department of Human Services, Child Welfare Division, **JOEL BAXTER**, in his individual and official capacity as an employee of the Oregon Department of Human Services, Child Welfare Division, **RONIKA FERGUSON**, in her individual and official capacity as an employee of the Oregon Department of Human Services, Child Welfare Division, **OMAR RUIZ**, in his | Case No.  6:21-cv-00141-AA<br><br>**REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE** |

individual and official capacity as an employee of the Oregon Department of Human Services, Child Welfare Division, **STATE OF OREGON**, by and through its **OFFICE OF THE GOVERNOR,**

 **STATE OF OREGON**, by and through its **PUBLIC HEALTH DIVISION, HEALTH  LICENSING OFFICE**, and **SYLVIE DONALDSON**, in her individual capacity and in her official capacity as Section Manager of the Health Licensing Office of the Public Health Division of the Oregon Health Authority

            Defendants.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTS ................................................................................................................. 2

ARGUMENT ....................................................................................................... 4

   I. The State has largely re-opened and there is no basis to conclude it will be
      closed again, rendering the declaratory and injunctive relief claims moot............ 4

   II. Plaintiffs have not had their right to procedural due process circumscribed
       (First Claim for Relief, Count 1) ............................................................. 7

   III. Governor Brown's Executive Orders comport with Equal Protection (First
        Claim for Relief, Count 2, and Fourth Claim for Relief, Count 2) ...................... 12

        A. Federal Equal Protection is not offended by the defendants' actions ............. 12

        B. Plaintiffs get no right to equal protection under the Oregon Constitution ....... 14

   IV. Plaintiffs have no cognizable right of substantive due process (First Claim for
       Relief, Count 4) ................................................................................ 16

   V. Plaintiffs have not been subject to an impermissible taking (First Claim for
      Relief Count 5 and Fourth Claim for Relief, Count 1) ................................... 17

   VI. State law does not recognize a claim for negligent infliction of emotional
       distress on the facts alleged (Second Claim for Relief) ................................ 17

   VII. There has not been any qualified deprivation of property for which
        compensation under ORS 433.441(6) is due (Fifth Claim for Relief) ................. 17

   VIII. The Complaint fails to state a claim for relief against defendants Gaston,
         Baxter, Ferguson, Ruiz, and Donaldson ................................................. 17

   IX. In the alternative to dismissal of the individuals, the State should be
       substituted for the individual defendants on all state claims that are not
       dismissed ......................................................................................... 18

CONCLUSION .................................................................................................... 18

Department of Justice
**100 SW Market Street**
**PORTLAND, OR 97201**
**(971) 673-1880** / Fax: **(971) 673-5000**

## TABLE OF AUTHORITIES

**Cases**

*Alaska Airlines, Inc. v. Long Beach*, 951 F.2d 997 (9th Cir. 1991)................................. 10

*Albright v. Oliver,* 510 U.S. 266, (1994) ....................................................... 18

*Amato v. Elicker*, 2020 WL 2542788 (D. Conn. May 19, 2020) .................................. 12

*Antietam Battlefield KOA v. Hogan,* 2020 WL 2556496 (D. Md. May 20, 2020) ...................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ...................................... 3, 16

*Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853 (9th Cir. 2017) ............................. 6

*Bell v. Burson*, 402 U.S. 535 (1971) ...................................................... 9, 10

*Calvary Chapel of Bangor v. Mills*, 2020 WL 2310913 (D. Me. May 9, 2020)....................... 13

*Cassell v. Snyders*, 2020 WL 2112374 (N.D. Ill. May 3, 2020)................................... 13

*Cross Culture Christian Ctr. v. Newsom*, 2020 WL 2121111 (E.D. Cal. May 5, 2020) .............. 13

*Elim Romanian Pentecostal Church v. Pritzker*, 2020 WL 2468194 (N.D. Ill. May 13, 2020) ................................................................................ 13

*Elkhorn Baptist Church v. Brown*, 366 Or. 506 (2020) ......................................... 12

FCC v. Beach Communications, Inc., 508 U.S. 307, (1993)....................................... 16

*FDIC v. Henderson*, 940 F.2d 465, (9th Cir. 1991)............................................. 19

*FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, (2007) ....................................... 7

*Foss v. National Fisheries Service*, 161 F.3d 584 (9th Cir. 1998) ............................ 9

*Franchechi v. Yee*, 887 F.3d 927 (9th Cir. 2018) ............................................ 9

*Gerhart v. Lake County Montana*, 637 F.3d 1013 (9th Cir. 2011)......................... 14, 15

*Gish v. Newsom*, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) ................................... 13

*Hamamoto v. Ige*, 881 F.3d 719, (9th Cir. 2018)............................................... 7

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ................................................ 3, 16

*Hartman v. Acton*, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020)........................... 13, 19

*Headwaters, Inc. v. Bureau of Land Management,* 893 F.2d 1012 (9th Cir.1989) ................. 6

*Kramer v. City of Lake Oswego*, 365 Or. 422, (2019) .................................... 17, 18

*Lee v. Schmidt-Wenzel*, 766 F.2d 1387, (9th Cir. 1985) ..................................... 7

Page 2

*Legacy Church, Inc. v. Kunkel*, 2020 WL 1905586 (D.N.M. Apr. 17, 2020) .............................. 13

*Michael H. v. Gerald D.,* 491 U.S. 110, (1989) .............................................................. 18

*Murphy v. Hunt*, 455 U.S. 478, (1982) ......................................................................... 7

*North Pacifica, LLC v. City of Pacific*, 526 F.3d 478, (9th Cir. 2008)........................... 14

*Pac. Nw. Generating Co-op. v. Brown*, 822 F. Supp. 1479 (D. Or. 1993), *aff'd,* 38 F.3d 1058 (9th Cir. 1994).............................................................................................. 6

*Portman v. County of Santa Clara*, 995 F.2d 898, (9th Cir. 1993)................................ 13

*Prime Healthcare Services, Inc. v. Harris*, 2017 WL 3525169, (S.D. Cal. Aug. 16, 2017) ............................................................................................................................ 16

*Reno v. Flores,* 507 U.S. 292, (1993) .......................................................................... 18

*Roberts v. Neace*, 2020 WL 2115358, (E.D. Ky. May 4, 2020), *rev'd in part* 958 F.3d 409 (6th Cir. 2020).............................................................................................. 13

*Sagana v. Tenorio*, 384 F.3d 731, (9th Cir. 2004) ...................................................... 18

*Sealey v. Hicks*, 309 Or. 387, (1990) ......................................................................... 17

*Seven Words LLC v. Network Sols.*, 260 F.3d 1089, (9th Cir. 2001)............................. 6

*Shanks v. Dressel*, 540 F.3d 1082 (9th Cir. 2008) ....................................................... 13

*Smothers v. Gresham Transfer, Inc.*, 332 Or. 83 (2001) .............................................. 17

*Spell v. Edwards*, 2020 WL 2509078 (M.D. La. May 15, 2020)................................. 12

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) .............................................. 15

*Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, (6th Cir. 2006) ........... 12

**Statutes**

ORS 183.310 *et seq.*.................................................................................................... 9

ORS 183.310(2)(a)(C) .................................................................................................. 9

ORS 183.411................................................................................................................. 9

ORS 183.450................................................................................................................. 10

ORS 183.457................................................................................................................. 10

ORS 183.460................................................................................................................. 10

ORS 183.464................................................................................................................. 10

ORS 183.480(1)............................................................................................................ 10

Page 3

ORS 183.482(1) ............................................................................................................ 10

ORS 183.482(8) ............................................................................................................ 10

ORS 183.500 .................................................................................................................. 9

ORS 183.630(1) ............................................................................................................ 10

ORS 183.635(2) ............................................................................................................ 10

**Other Authorities**

EO 20-12 ........................................................................................................................ 3

EO 20-25 ................................................................................................................. 1, 3, 5

Executive Order 20-27, § 1 ........................................................................................... 5

Executive Order 20-66, § 1 ........................................................................................... 5

**Rules and Regulations**

Fed. R. Evid. 201(b) ...................................................................................................... 3

Department of Justice
**100 SW Market Street**
**Portland, OR 97201**
**(971) 673-1880** / Fax: **(971) 673-5000**

## INTRODUCTION

Ms. Graham admits that she refused to do what the overwhelming majority of Oregonians were asked to do and what the overwhelming majority of Oregonians did: obey the lawful emergency orders of the Governor to combat COVID-19.  Ms. Graham would cast herself as a modern-day Jean Valjean,[1] only taking steps to protect her family.  Such a characterization, however, is irrelevant.  There is no exemption from government action because of a belief in one's own righteousness.  There is only the question of whether or not the governmental actions were legitimate.  In this case, they were.

Plaintiffs contend their claims are not moot because Executive Order 20-25 "continued the requirement that Plaintiffs' business be shut down."  Response at 14.  However, the Complaint was filed seven months after the repeal of Executive Order 20-12 and the issuance of Executive Order 20-25, and simply does not reference the latter.[2]  EO 20-25, issued May 14, 2020, called for a "phased reopening," which had occurred in Marion County many months prior to the filing of this action.  https://www.oregon.gov/gov/Documents/executive_orders/eo_20-25.pdf, Section 1(b) at 4.  Glamour was only to remain closed until Marion County achieved Phase I.  *Id.* at Section 5(a) at 7.  Marion County entered Phase I, allowing Glamour! to reopen, only eight days later on May 22, 2020.

https://www.statesmanjournal.com/story/news/2020/05/20/coronavirus-marion-county-restaurants-salons-reopening/5233661002/.  Nor are the circumstances likely to "evade review" should they ever recur, which seems unlikely now that a vaccine is being distributed.

---

[1] Or, apparently, would compare herself to Martin Luther King and Governor Brown to Hitler.  Response at 37.  Such hyperbole should be disregarded by the Court.

[2] And, it must again be noted, the Complaint was filed in State court under its *fact* pleading standards.

Page 1 -   **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

Plaintiffs contend that they have not received process for their licenses, but no revocation was ever attempted and they never requested any process.  They were subject to nothing more than the emergency powers of the Governor that impacted business regardless of whether any licensure was required.  No process was due.

Plaintiffs' equal protection argument is that they are a "class of one."   However, they were not treated uniquely relative to others.  Indeed, they were treated precisely the same.  Similarly, they assert their State constitutional rights were violated but they do not show how they were uniquely treated differently.

Plaintiffs assert that they were deprived the right to earn a living, thus violating their right of substantive due process.  But they improperly conflate a temporary interruption in their livelihood that impacted most Americans with a loss of profession.  They therefore misapprehend the law of substantive due process.[3]

Plaintiffs have conceded their takings claims and Ms. Graham's claim for negligent infliction of emotional distress, as well as her claim under Article I, section 18 of the Oregon Constitution and the claim for compensation under ORS 433.441.  The remainder of the motion remains for this Court's determination.  The Court should find the defendants acted properly; that the complaint fails to state a claim for relief; and that the motion should be granted.[4]

### FACTS[5]

The Court should take judicial notice of plaintiff Graham's publicly stated decision to close Glamour!  https://katu.com/news/local/owner-of-salem-salon-that-re-opened-despite-state-

---

[3] Plaintiffs admit, Response at 28, that they only allege a loss of income.  In doing so, but maintaining their claim, they attempt to re-write the law of substantive due process.

[4] Plaintiffs also concede the motion for substitution, and therefore, to the extent any state law claims survive, the individual defendants will no longer be named in those claims.

[5] Defendants have cited herein to a number of documents such as the Governor's Executive Orders, and to highly respected and authoritative sources relating to the world-wide COVID-19

Page 2 -    **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

orders-says-she-is-moving.  As of April 1, 2021, Glamour!'s website displays a graphic over its
name with a big, red "CANCELLED," and the notation "permanently closed due to Governor
Kate Brown and the liberal cancel culture in Oregon."  www.glamourslaonsalem.com.

        The Court should also disregard the unfounded and hyperbolic nature of the "facts"
alleged by plaintiffs, including, for example, the allegation that no complaint about Ms.
Graham's children ever came into DHS and that the complaint was "fabricated."  Response at
12.  That is not even reasonably based on "information and belief;" it is pure paranoia without
any factual foundation in the Complaint.  As Sen. Daniel Patrick Moynihan once said, "you are
entitled to your own opinions, but not your own facts."  The law says essentially the same thing,
even on a motion to dismiss.  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009);
*Harlow v. Fitzgerald,* 457 U.S. 800, 817-818, 102 S. Ct. 2727 (1982)

        Even accepting facts about which Ms. Graham has actual knowledge as true, very few
matter.  The Governor issued EO 20-12, closing down most businesses, including plaintiffs, in
March 2020.  https://www.oregon.gov/gov/Documents/executive_orders/eo_20-12.pdf,  Plaintiff
complied until she didn't on May 5th.  Complaint ¶ 64.  She reopened, and other than one letter
suggesting action *might* be taken — action that indisputably never was taken — her business
operated unimpeded.  Complaint ¶¶ 67, 79, *passim.*  That was the situation until Ms. Graham,
totally of her volition, recently permanently closed Glamour! to move out of state.
https://katu.com/news/local/owner-of-salem-salon-that-re-opened-despite-state-orders-says-she-
is-moving.  On May 14, 2020, the Governor issued EO 20-25, which allowed for re-opening
businesses in phases.  https://www.oregon.gov/gov/Documents/executive_orders/eo_20-25.pdf;
Marion County entered the phase that allowed Glamour! to re-open not later than May 22, 2020.

crisis, such as those from the World Health Organization and the tracking information from the
University of Washington.  None of these citations is to material that cannot be "accurately or
readily ascertained," and so defendants request the Court take judicial notice of these facts.  Fed.
R. Evid. 201(b).

Department of Justice
**100 SW Market Street**
**Portland, OR 97201**
**(971) 673-1880** / Fax: **(971) 673-5000**

https://www.statesmanjournal.com/story/news/2020/05/20/coronavirus-marion-county-restaurants-salons-reopening/5233661002/. The side issue of the report of Ms. Graham's children to DHS, as to which Graham has nothing but her own unfounded belief is related, was resolved in her favor. Complaint ¶ 79.

Everything else in plaintiffs' "fact" section is adjectival hyperbole or speculative opinion.

## ARGUMENT

I.    **The State has largely re-opened and there is no basis to conclude it will be closed again, rendering the declaratory and injunctive relief claims moot.**

Plaintiffs argue their claims for declaratory judgment and injunctive relief are not moot or, at least, can be addressed under the "capable of repetition, yet evading review" exception to mootness. They are wrong. Those claims are moot because no effective declaratory or injunctive relief can be issued that would have any impact. Their claims are based on the issuance of an executive order that required the salon to temporarily close. But no executive order has prevented Ms. Graham from operating her salon in Oregon since May 2020. Moreover, Ms. Graham has closed her salon and has moved out of state where no declaratory relief or injunctive relief issued in her favor and against Oregon public officials and employees could possibly have any effect. Nor is the mootness exception applicable here because, among other reasons, Plaintiffs have the burden to prove the exception applies and has failed to carry that burden.

Plaintiffs first argue their injunctive and declaratory relief claims are not moot because Executive Order 20-25, even if it superseded Executive Order 20-12, still required salons like Glamour! to be closed. Response at 14. Plaintiffs are wrong for multiple reasons.

First, the provision of Executive Order 20-25 (§ 5(a)) they cite did not apply in Marion County once Marion County was permitted to enter Phase I of the Governor's reopening of Oregon. At that point, section 17(b)(2) expressly allowed "personal care businesses, * * * such as salons" to "reopen" under guidance of Oregon Health Authority. Executive Order 20-25, §

Page 4 -    **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

17(b)(2).  https://www.oregon.gov/gov/Documents/executive_orders/eo_20-25.pdf.  Marion

County entered Phase I by, at least, May 23, 2020.  *See* May 23, 2020 Building a Safe & Strong

Oregon, https://web.archive.org/web/20200523085527/https://govstatus.egov.com/reopening-

oregon#countyStatuses (identifying county statuses as of May 23, 2020).

     Second, Executive Order 20-25 was itself rescinded by Executive Order 20-27 on June 5,

2020, which was then rescinded by Executive Order 20-66 on December 2, 2020.  *See* Executive

Order 20-27, § 1.  https://www.oregon.gov/gov/Documents/executive_orders/eo_20-27.pdf);

Executive Order 20-66, § 1, https://www.oregon.gov/gov/Documents/executive_orders/eo_20-

66.pdf.  Neither of those Executive Orders, the latter of which is still in effect today, required

Marion County salons to close.  Marion County was still in Phase I under the earliest stages of

implementation of Executive Order 20-27, under which phase, salons could be open.  *See*

Executive Order 20-27, § 15(b)(2); Oregon Counties Approved to Enter Phase 2, June 8, 2020,

https://web.archive.org/web/20200611232511/https://sharedsystems.dhsoha.state.or.us/DHSFor

ms/Served/le2321d.pdf).  The currently effective guidance, issued under Executive Order 20-66,

indicates that "personal services" are expressly "allowed" under every possible county risk level.

*See* Oregon Health Authority, Sector Risk Level Guidance Chart.

https://sharedsystems.dhsoha.state.or.us/DHSForms/Served/le3461.pdf).  In short, Ms. Graham's

salon has been able to operate under COVID-19-related executive orders since mid-May 2020.

Any declaratory or injunctive relief issued regarding the early pandemic closure of salons would

be advisory and have no impact.

     Further, the Ninth Circuit case law plaintiffs rely upon to argue that the declaratory relief

claims are not moot actually supports the opposite conclusion.  Plaintiffs cite *Bayer v. Neiman*

*Marcus Group, Inc.*, 861 F.3d 853, 867 (9th Cir. 2017), for the proposition that declaratory relief

is only justified under Article III when the "'the challenged * * *activity * * * is not contingent,

has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may

Page 5 -    **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND**
               **MOTION TO SUBSTITUTE**

well be a substantial adverse effect on the interests of the * * * parties.'" *Id.* (quoting *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1098-99 (9th Cir. 2001).  As *Bayer* also explains, "a declaratory judgment merely adjudicating past violations of federal law —as opposed to continuing or future violations of federal law— is not an appropriate exercise of federal jurisdiction."  861 F.3d at 867.  The declaratory (and injunctive) claims are moot here because Plaintiffs seek an adjudication as to the validity of Governor Brown's spring 2020 executive orders that have now been rescinded or superseded.  The challenged activity —forced closure of Ms. Graham's salon— has indeed disappeared.  Those claims are moot.[6]

Nor are the injunctive and declaratory relief claims capable of repetition yet evading review.  Actions that would otherwise be moot but are "capable of repetition yet evading review" permit the Court to retain jurisdiction.  "That exception applies only in exceptional situations, where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Hamamoto v. Ige*, 881 F.3d 719, 722 (9th Cir. 2018) (internal quotations omitted).  The burden to prove that the exception applies is on the party seeking to benefit from it; here, the burden is on plaintiffs.  *See Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985) (holding the plaintiff had the burden to prove the mootness exception elements are met).  Even if plaintiffs could meet the first prong, they certainly cannot meet the second.

The second element of the capable of repetition yet evading review exception requires either a "'reasonable expectation' or a 'demonstrated probability' that the same controversy will

---

[6] Mootness is "determined on a claim by claim basis."  *Pac. Nw. Generating Co-op. v. Brown*, 822 F. Supp. 1479, 1506 (D. Or. 1993), *aff'd*, 38 F.3d 1058 (9th Cir. 1994) (citing *Headwaters, Inc. v. Bureau of Land Management,* 893 F.2d 1012, 1015–16 (9th Cir.1989) (separately addressing mootness issue as to injunctive relief and declaratory relief).

Page 6 -   **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).  In the as-applied context, although a party need not show that the current circumstances "down to the last detail" would recur, they need to show the probability of "materially similar" circumstances. *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463 (2007).  Plaintiffs have not shown and cannot show that the circumstances that caused the temporary closure of Ms. Graham's business are likely to recur and lead to a similar result.  In fact, the pandemic has continued for over a year and yet, since mid-May 2020, Ms. Graham has been able to operate her salon.  On top of that, she has now left the state and closed the salon.  Due to the convergence of the unique facts that existed in early 2020 and those that exist today, this particular controversy is uniquely *unlikely* to recur.

Plaintiffs claim they have met this standard because Governor Brown extended the state of emergency until May 2021.  Response at 16.  But the state of emergency itself does not demonstrate a probability that the Governor will temporarily close salons again.  Nor would any such closure, even if it did hypothetically occur, impact either one of the Plaintiffs given Ms. Graham's move out of state.  Plaintiffs failed to carry their burden to prove that the mootness exception applies.

Because all the claims for declaratory and injunctive relief are moot and are not capable of repetition yet evading review, those claims should be dismissed.

## II.    Plaintiffs have not had their right to procedural due process circumscribed (First Claim for Relief, Count 1).

Plaintiffs' response to defendants' procedural process argument is premised on a misunderstanding of that argument and a misunderstanding of their circumstances.

Plaintiffs insist that they have a due process right in their licenses.  In the abstract — although that is limited as noted below— defendants agree there is some right to some quantum of procedural due process in a license.  But the simple fact is there has been *no* attempt whatsoever to revoke defendants' licenses, and the Complaint does not allege there has been.

Page 7 -    **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

Plaintiffs, therefore, improperly conflate their licenses with the temporary cessation of their business, which was done voluntarily although in compliance with Governor Brown's emergency order which applied not to their license, but to virtually every business in the State of Oregon.

Plaintiffs' further obfuscate the issue by not conceding that they have *never* requested any form of procedure.  They seem to be contending that due process must be offered affirmatively.  They provide no support for that curious contention, and they provide no answer to the idea that, if that is so, such an offer would have to be made affirmatively to *every* business affected by COVID-19 in Oregon and in 46 states of the United States where closures were ordered.

The Governor's Executive Order 20-12 was not limited to or directed at plaintiffs' license.  It was not limited to or directed at the universe of licenses held by professionals in Oregon.  It affected business such as shoe repairs or bookstores that do not require a state license.  (It also, conversely, affected but did not necessarily close licensed professions that could largely move on-line or work telephonically, such as lawyers and stockbrokers.)

Plaintiffs contend that a threat to their licenses constitutes a federal interest.  As just noted, defendants do not necessary disagree with that contention, although they note that most of the cases cited by plaintiffs are inapposite.

To begin with, plaintiffs cite to *Franchechi v. Yee*, 887 F.3d 927 (9th Cir. 2018), and to *Foss v. National Fisheries Service*, 161 F.3d 584 (9th Cir. 1998), cases in which procedural due process challenges were rejected and the government prevailed.  Plaintiffs also cite to cases in which the issue was not professional licenses, but *driver's* licenses, such as *Bell v. Burson*, 402 U.S. 535 (1971) and *Francheschi*.  A driver's license has a very different status relative to constitutional protection than a license for professional practice.

Page 8 -    **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

Notably, the Supreme Court in *Bell* merely said that a license was not to be taken away without due process. *Id*. at 535. Nowhere in the Complaint is it contended that such an event occurred. As *Bell* notes, it is essential to a claim for due process that the person invoking the right have made a challenge to the deprivation, and in *Bell*, as here, that did not occur. *Bell, supra*, at 936. Indeed, the only allegation in the Complaint is that someone in government —not any of the individual defendants— sent a letter threatening to impose penalties including possible license revocation if plaintiff remained open. Complaint ¶ 67. The Complaint is thereafter silent about any follow through relating to a potential revocation…because there was none.

Plaintiffs point to *Alaska Airlines, Inc. v. Long Beach*, 951 F.2d 997 (9th Cir. 1991), for the general proposition that due process is required. *Alaska Airlines* is nothing like the situation before the Court. In *Alaska Airlines*, the Ninth Circuit noted that:

> [t]he district court's final basis for invalidating the ordinance, and the one on which we uphold the district court's order, is that the ordinance denies the air carriers procedural due process. Specifically, the ordinance authorizes the airport manager, alone and without a hearing, to require carriers to reduce flights. It further provides that the determination of the airport manager 'shall be conclusive unless it is demonstrated to lack a rational basis.' The ordinance provides no procedures for notifying carriers of a contemplated change to allow them to challenge the determination of the airport manager.

*Id.* at 986. In other words, there was, functionally, *no* due process at all in that circumstance.

It is not alleged here —nor can it be— that any revocation would happen outside a process governed by the Oregon administrative Procedure Act. ("OAPA"). The Health Licensing Office is subject to OAPA as an agency of the State. ORS 183.310 *et seq*. A proceeding in which an Oregon agency intends to suspend, revoke, or refuse to renew or issue a license where the licensee demands a hearing is a "contested case." ORS 183.310(2)(a)(C). Parties to a contested case have many procedural rights. *See* ORS 183.411 to ORS 183.500. Such rights are those normally present in such administrative litigation. A few examples are:

- Right to notice of a statement of the matters asserted or charged by the agency,

Page 9 -   **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

- Right to hearing,

- Right to notice of the procedures that will be used at the hearing, including the authority and jurisdiction for the hearing and the issues to be considered,

- Right to be represented by counsel,

- Right to respond to all issues properly before the hearing officer,

- Right to present evidence, and

- Right to cross-examine witnesses and present rebuttal evidence.

ORS 183.450, 183.457. Moreover, contested case hearings must be conducted before an administrative law judge ("ALJ") from the Office of Administrative Hearings. ORS 183.630(1); ORS 183.635(2). After presiding over the hearing, the ALJ prepares a proposed order. ORS 183.464. The proposed order must be served on all parties, must include recommended findings of fact and conclusions of law, and may be disputed by an adversely affected party. ORS 183.460; 183.464.

Any party may appeal the final order to the Oregon Court of Appeals. *See* ORS 183.480(1); ORS 183.482(1). The Court of Appeals may reverse or remand an order for legal and procedural mistakes, improper exercise of agency discretion, or lack of substantial evidence supporting the order. ORS 183.482(8).

Accordingly, plaintiffs have not properly alleged that whatever process that was due them would not have been extended had a revocation procedure actually commenced. They have not alleged any tangible step taken towards such a revocation.

As to the question distinct from licenses as to whether the Governor can temporarily impact the economic life of the State by closing businesses, plaintiffs object to the cases cited by defendants. Again, however, they misunderstand the use to which those cases were put. Defendants do not dispute that, for its particular facts, *Women's Medical Professional Corp. v. Baird*, 438 F.3d 595, 611-12 (6th Cir. 2006), came out for the plaintiff. But that does not lessen

Page 10 -  **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

the general principle set forth therein that — distinct from the issue of *licenses*— the right to operate a business, to whatever extent it exists, is not an "unfettered freedom." *Women's Medical, supra,* at 611-12.

As to plaintiffs' attempts to distinguish the other cases cited by defendants, it matters not whether they were based on an ordinance or an act of the Board of Taxation rather than a Governor's order, and plaintiffs offer no explanation why that should matter.  The simple fact is that the Governor's powers have been upheld as a valid exercise of her authority, and that should end the discussion.  *Elkhorn Baptist Church v. Brown*, 366 Or. 506 (2020).  The governor has the authority to suspend business temporarily in the manner she did.[7]  *Id.*

Accordingly, because plaintiffs focus incorrectly on their never threatened licenses rather than their temporarily shuttered businesses, they have not properly identified the interest to which due process might attach, have not shown a deprivation of that interest, and have not shown a lack of due process.  *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008); *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Rather than enumerate how those three elements have been met, plaintiffs engage in a political discourse about how defendants constitute a "'Government Class' who are guaranteed a paycheck" and allege "[t]he callousness with which these restrictions are imposed, and the

---

[7] There are a wealth of cases precisely on point affirming the power of states and their Governors to take similar actions in this time of health crisis.  Plaintiffs bring none of them to the Court's attention and make no attempt to distinguish their own claims.  *Antietam Battlefield KOA v. Hogan,* 2020 WL 2556496, *8 (D. Md. May 20, 2020); *Amato v. Elicker*, 2020 WL 2542788, *10-12 (D. Conn. May 19, 2020); *Spell v. Edwards*, 2020 WL 2509078, *4 (M.D. La. May 15, 2020); *Elim Romanian Pentecostal Church v. Pritzker*, 2020 WL 2468194, *2-4 (N.D. Ill. May 13, 2020); *Calvary Chapel of Bangor v. Mills*, 2020 WL 2310913, *7 (D. Me. May 9, 2020); *Cross Culture Christian Ctr. v. Newsom*, 2020 WL 2121111, *5, *7 (E.D. Cal. May 5, 2020); *Roberts v. Neace*, 2020 WL 2115358, *3 (E.D. Ky. May 4, 2020), *rev'd in part* 958 F.3d 409 (6th Cir. 2020); *Cassell v. Snyders*, 2020 WL 2112374, *11 (N.D. Ill. May 3, 2020); *Gish v. Newsom*, 2020 WL 1979970, *6 (C.D. Cal. Apr. 23, 2020); *Hartman v. Acton,* 2020 WL 1932896 , *7-8, 10 (S.D. Ohio Apr. 21, 2020); *Legacy Church, Inc. v. Kunkel*, 2020 WL 1905586, *24 (D.N.M. Apr. 17, 2020).

Department of Justice
**100 SW Market Street**
**Portland, OR 97201**
**(971) 673-1880** / Fax: (971) 673-5000

intentional disregard for the pleas of businesses and citizens alike has created obvious acrimony

between the private sector and the public sector." Response at 34. That is not helpful or

relevant. It also is not a basis for finding a deprivation of due process.

### III.   Governor Brown's Executive Orders comport with Equal Protection (First Claim for Relief, Count 2, and Fourth Claim for Relief, Count 2).

#### A.  Federal Equal Protection is not offended by the defendants' actions.

Defendants' initial Memorandum set forth why Executive Order 20-12 did not

impermissibly distinguish between barber shops and hair salons on one side and cosmetology

businesses within senior centers on the other side. In response, plaintiffs make no effort to

explain why they believe the two groupings are similar, but rather jump to a theory that their

rights are rooted in what is known as a "class of one" equal protection violation claim. It is

plaintiffs who must show that they meet the elements of the claim. For a "class of one" equal

protection claim, they must show (1) intent, (2) to treat plaintiffs differently from "similarly

situated" persons, and (3) no rational basis for the distinction. *Gerhart*, *supra*, 637 F.3d at 1021;

*North Pacifica, LLC v. City of Pacific*, 526 F.3d 478, 486 (9th Cir. 2008).

There are numerous problems with this assertion. First, the Complaint clearly does *not*

assert that plaintiffs were treated uniquely from all the other hair salons in the State. Complaint

¶¶ 92-99. Second, the aggregate group of barber shops and hair salons outside senior citizen

homes —surely an overwhelming majority of all such businesses— does not qualify as a "class

of one." Third, there is a clear rational basis for the distinction that was drawn in EO 20-12, and

plaintiffs make no attempt to contest that.[8]

The Complaint is clear. It does not allege a "class of one" consisting of

Graham/Glamour! Rather, it alleges "Executive Order 20-12 was not applied to all cosmetology

---

[8] The comparison between beauty parlors and services in assisted living homes is inapt. Such services are part of a sealed environment for a specific population of particularly susceptible individuals, as the death rates for those of advanced years and with complicating conditions have clearly demonstrated.

Page 12 -  **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

facilities like Glamour!, nor all cosmetology service providers like Graham.  Notwithstanding the language of Executive Order 20-12, some cosmetology facilities and cosmetology providers were allowed to continue to provide services * * *."  Complaint ¶ 93.  Moreover, in the Response, plaintiffs point to the differentiation between persons and businesses providing cosmetology services to the public and those "that are provided as part of the health and safety of those living in senior housing and long term care settings* * *."  Response at 24.  It relates only to the Executive Order, *not* to the other alleged acts.[9]  Because plaintiffs are not a class of one (noting that they are actually *two*), they may not maintain an equal protection claim under that theory.

Second, to the extent plaintiffs attempt to classify all barber shops not in senior centers as a "class of one," that clearly fails.  There is simply no provision in the law, under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), and *Gerhart v. Lake County Montana*, 637 F.3d 1013 (9th Cir. 2011), that allows whole large groups of people or institutions to be "one."  In this case, it seems logical to assume that the group of salons, barber shops and cosmetologists *outside* senior living and assisted case facilities is far larger than the number located within such sites.  Plaintiffs cannot point to a single case in which a majority group gains a right to sue as a "class of one," because there is no such case.

Nor can plaintiffs articulate how free-standing, open-to-all beauty shops are "similarly situated" to presumably low volume, captive-audience facilities built into a healthcare institutions as part of their overall menu of services available only to those residing therein.

Third, there was clearly a rational basis for making the distinction for persons providing services within senior centers.  It is well understood that seniors have been particularly

---

[9] And, again, no specific action was ever taken against plaintiffs' licenses, the letter from the City of Salem is unrelated to any of the defendants, and the report relating to Ms. Graham's children is not related by any alleged fact this Court has to accept and (again) was dealt with in Ms. Graham's favor.

Page 13 -  **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

vulnerable to COVID-19, that their fatality rates have been an order of magnitude higher than for younger persons.  And seniors in assisted living presumably have a greater incidence of complicating conditions which render that population even more susceptible to the disease. Allowing persons screened by such facilities and obeying their protocols to continue is easy to distinguish from those providing services to the general population.  Such businesses, providing services to the general population were halted under EO 20-12 regardless of whether they were beauticians, movie theaters, art galleries, shoe repair shops.

The standard for finding a rational basis for the government decision is slight.  Indeed, where there is "any reasonably conceivable state of facts that could provide a rational basis for the classification," the inquiry ends. *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313–14 (1993); *Prime Healthcare Services, Inc. v. Harris*, 2017 WL 3525169, *14 (S.D. Cal. Aug. 16, 2017).  Although plaintiffs allege there was no rational basis, unlike a factual assertion, this Court need give no weight at all to a legally conclusory allegation.  *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1951 (2009); *Harlow v. Fitzgerald,* 457 U.S. 800, 817-818, 102 S. Ct. 2727 (1982).

In sum, there is no basis, even given the allegations in the Complaint, that the Complaint states a viable claim for relief for equal protection.

### B.  Plaintiffs get no right to equal protection under the Oregon Constitution.

Plaintiffs have not stated a claim under Article I, section 20 of the Oregon Constitution. They contend Governor Brown's Executive Order 20-12 violated Article I, section 20 by "allow[ing] some cosmetology licensees to remain open, while other licensees such as Graham and Glamour, were forced to close."  Response at 33.  They claim in their Complaint that (rescinded) Executive Order 20-12 states, "Cosmetology services that are provided as part of the health and safety of those living in senior housing and long term care setting are permitted to operate[.]"  Complaint ¶ 40.  This language appears nowhere in EO 20-12.  Regardless, plaintiffs

Page 14 -  **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

are wrong that this distinction violates Article I, section 20 because the distinction is not based on immutable characteristics, and the health and safety-based distinction is reasonable.

In their brief, plaintiffs do not suggest this case concerns a classification that is based on "'immutable' personal characteristics." *See Kramer v. City of Lake Oswego*, 365 Or. 422, 455-56 (2019) (suggesting that such a classification can be based on "prejudice or stereotyped prejudgments" and if so and there is no other reason for the classification, it "will not withstand a challenge"). Rather, they contend the distinction the Governor allegedly made between cosmetology licensees is not reasonable; they argue it lacks a "legitimate purpose." Response at 33; *see Kramer*, 365 Or. at 456-57 (explaining the Article I, section 20, test for classifications that are not based on immutable characteristics is whether the classification is reasonable or rational). But even if cosmetology licensees were a "true class" (which they are not), Plaintiffs are wrong that the distinction among them is not reasonable. *See Sealey v. Hicks*, 309 Or. 387, 397 (1990), *overruled in part on other grounds by Smothers v. Gresham Transfer, Inc.*, 332 Or. 83 (2001) (noting that classifications created by the challenged law are "entitled to no special protection and, in fact, are not even considered to be classes for the purposes of Article I, section 20").

The rational basis standard is highly deferential. It requires only "a reasonable relationship between the classification and the legitimate legislative purpose that it serves." *Kramer*, 365 Or. at 458-59. As the Complaint itself notes, the alleged distinction between licensees permitted to operate and those not permitted to operate under the rescinded Executive Order 20-12 was based expressly on "the health and safety of those living in senior housing and long term care setting[s]." Complaint ¶ 40. Distinguishing among cosmetology licensees on the basis of health and safety during a deadly global pandemic for the benefit of seniors and others in long-term housing is reasonable. For that reason, Plaintiffs cannot state a claim under Article I, section 20, based on the facts alleged.

Page 15 -  **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

**IV.    Plaintiffs have no cognizable right of substantive due process (First Claim for Relief, Count 4).**

Plaintiffs cite no authority to support the proposition that the facts they allege support a claim for violation of their substantive due process rights.  Substantive due process is limited to the vindication of the most fundamental liberty interests.  *See, e.g., Albright v. Oliver,* 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right of bodily integrity."); *Reno v. Flores,* 507 U.S. 292, 302 (1993) (substantive due process "forbids the government to infringe certain 'fundamental' liberty interests); *Michael H. v. Gerald D.,* 491 U.S. 110, 122 (1989) (substantive due process requires that the asserted right be fundamental and traditionally protected by our society). The facts alleged fall short of establishing violation of a fundamental liberty interest.

The Supreme Court "has never held that the right to pursue work is a fundamental right." *Sagana v. Tenorio*, 384 F.3d 731, 743 (9th Cir. 2004).  A substantive due process claim can be sustained if a person is unable to pursue the *occupation* of her choice.  *See FDIC v. Henderson*, 940 F.2d 465, 474 (9th Cir. 1991).  Ms. Graham did not allege she was unable to pursue her occupation.

Plaintiffs suggest the temporary closure of nearly all retail business operations in late March 2020 violated a fundamental right to work.  *See* Response at 27-28.  But there is no such right.  And plaintiffs concede that Ms. Graham was able to —and did— continue to pursue her occupation after the temporary closure ended in May 2020.  Complaint ¶ 45 (stating Glamour! was closed from March 24, 2020, until May 5, 2020).  Plaintiffs cited no authorities upholding a substantive due process claim under these circumstances.  *See, e.g., Hartman v. Acton*, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020) (rejecting substantive due process claim by bridal shop owner forced to close under pandemic closure order).

Plaintiffs next point to allegations in the Complaint stating that Ms. Graham's and/or Glamour!'s license was threatened with revocation.  Response at 27.  But even if government

Page 16 -  **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

actions against licenses can implicate due process, Plaintiffs do not allege that any action was actually taken against any license.  A letter threatening license revocation cannot support a substantive due process claim.

Because there is no violation of any right of substantive due process under these circumstances, Plaintiffs' substantive due process claim should be dismissed.

## V.    Plaintiffs have not been subject to an impermissible taking (First Claim for Relief Count 5 and Fourth Claim for Relief, Count 1).

Plaintiffs have conceded the takings claims —the First Claim for Relief, Count Five and the Fourth Claim for Relief, Count Four— and so an order dismissing those claims with prejudice is appropriate without any further argument.

## VI.    State law does not recognize a claim for negligent infliction of emotional distress on the facts alleged (Second Claim for Relief).

Plaintiffs concede their claim for negligent infliction of emotional distress, and so an order dismissing that portion of the Second Claim for Relief with prejudice is appropriate without further argument.

## VII.    There has not been any qualified deprivation of property for which compensation under ORS 433.441(6) is due (Fifth Claim for Relief).

Plaintiffs concede their claim for statutory compensation, and so an order dismissing the Fifth Claim for Relief with prejudice is appropriate without further argument.

## VIII.    The Complaint fails to state a claim for relief against defendants Gaston, Baxter, Ferguson, Ruiz, and Donaldson

In their initial Memorandum, defendants pointed out that, as to each individual save for the Governor, plaintiffs were unable to make a single, specific allegation about improper actions. Curiously, plaintiffs simply have not responded to that component of this motion.

It is, therefore, undisputed that, other than being identified, plaintiffs have said *nothing* about Rebecca Jones Gaston, nothing about Sylvie Donaldson.  Joel Baxter is only alleged to have received a complaint, not to have done anything improper about it.  Complaint ¶¶ 71, 75.

Page 17 -  **REPLY MEMORANDUM IN SUPPORT OF PARTIAL MOTION TO DISMISS AND MOTION TO SUBSTITUTE**

Ronika Ferguson is only alleged to have asked Ms. Graham to respond to the complaint DHS

received.  Complaint ¶ 75.  Omar Ruiz found in Ms. Graham's *favor* as to the allegations.

Complaint ¶¶ 76, 79.

Accordingly, each of the five should be dismissed from the federal claims.  In

conjunction with plaintiffs' consent to substitution, the Court should order their complete

dismissal and the elimination of their names from the caption of this action.

### IX.  In the alternative to dismissal of the individuals, the State should be substituted for the individual defendants on all state claims that are not dismissed.

Plaintiffs concede substitution is appropriate as to the state law claims.  Accordingly, the

Court should substitute the State of Oregon for Governor Brown, Ms. Gaston, Mr. Baxter, Ms.

Ferguson, Mr. Ruiz, and Ms. Donaldson as the proper defendant in the remaining component of

the Second Claim for Relief (intentional infliction of emotional distress), the Third Claim for

Relief (abuse of process), and the Fourth Claim for Relief, Count Two if it is not dismissed (state

constitutional equal protection).

## CONCLUSION

Plaintiffs have submitted a screed about the uncaring nature of government workers who

continue to be paid through the pandemic.  They have implicitly compared Ms. Graham to

Martin Luther King and the Governor to Adolph Hitler.  Response at 37.  Those are, simply,

irrelevancies and improper plays for emotion.  The simple questions before the Court are ones of

law.

The answers to those questions of law favor the defendants.  Of the claims remaining for

this Court to determine, defendants suggest it is clear that the matter is moot; that plaintiffs have

no entitlement to any process they did not receive; and that their rights to equal protection and

substantive due process have not been violated.

Department of Justice
**100 SW Market Street**
**Portland, OR 97201**
**(971) 673-1880** / Fax: (971) 673-5000

For the foregoing reasons, defendants' partial motion to dismiss and to substitute should be granted.  Only the claims pursuant to the First Amendment and common law abuse of process should proceed.

DATED April __2__, 2021.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

*s/Marc Abrams*

MARC ABRAMS #890149
Assistant Attorney-in-Charge
CHRISTINA BEATTY-WALTERS #981634
Senior Assistant Attorney General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
Marc.Abrams@doj.state.or.us
Tina.BeattyWalters@doj.state.or.us
Of Attorneys for Governor Katherine Brown