THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LINDSEY GRAHAM;
GLAMOUR!, LLC,

Civ. No. 6:21-cv-00141-AA

                    Plaintiffs,

**OPINION & ORDER**

        v.

KATE BROWN; STATE OF
OREGON; REBECCA JONES
GASTON; JOEL BAXTER;
RONIKA FERGUSON; OMAR
RUIZ; SYLVIE DONALDSON,

                    Defendants.

_____

AIKEN, District Judge.

        This case comes before the Court on a Motion to Dismiss filed by Defendants. ECF No. 2.  The Court concludes that this motion is suitable for resolution without oral argument.  For the reasons set forth below, the Motion is GRANTED.  The Complaint is dismissed with leave to amend.

## LEGAL STANDARD

        To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

## BACKGROUND

Plaintiff Glamour!, LLC ("Glamour") is an Oregon limited liability company with its principal place of business in Marion County, Oregon. Compl. ¶ 11. ECF No. 1. Glamour, "though its independent contractors," offers hair styling, tanning, and other cosmetology services. *Id.* at ¶ 25. Plaintiff Lindsey Graham is the owner and sole member of Glamour and a resident of Marion County, Oregon. *Id.* at ¶¶ 10-11. Both Glamour and Graham hold licenses to provide services issued by the relevant Oregon state agencies. *Id.* at ¶¶ 26-31. Glamour's business space is leased from the City of Salem. *Id.* at ¶ 65.

Defendant Kate Brown is the Governor of Defendant State of Oregon. Compl. ¶ 12. Defendant Rebecca Jones Gaston is the Director of the Child Welfare Division of the Oregon Department of Human Services ("DHS"). *Id.* at ¶ 16. Defendants Joel Baxter, Ronika Ferguson, and Omar Ruiz are employees of DHS. *Id.* at ¶¶ 17-19. Defendant Sylvie Donaldson is the Section Manager of the Health Licensing Office of the Public Health Division of the Oregon Health Authority. *Id.* at ¶ 20.

In late 2019 and early 2020, COVID-19 emerged as a pandemic disease. COVID-19 is a virus which causes respiratory disease that may lead to serious illness

or    death.    Executive    Order    ("EO")    20-12,    *available    at https://www.oregon.gov/gov/admin/Pages/eo_20-12.aspx* (last accessed November 3, 2021). "COVID-19 spreads person-to-person through coughing, sneezing, and close personal contact, including touching a surface with the virus on it and then touching your mouth, nose, or eyes." *Id.* "To reduce the spread of COVID-19, the United States Centers for Disease Control and Prevention (CDC) has recommended community mitigation strategies to increase containment of the virus and to slow transmission of the virus, including cancellation of gatherings of people and social distancing in smaller gatherings." *Id.*

On March 8, 2020, Governor Brown declared a state of emergency under ORS 401.165 *et seq.* "due to the public health threat posed by the novel infectious coronavirus." EO 20-12. On March 13, 2020, President Trump likewise declared the COVID-19 outbreak to be a national emergency. *Id.* Governor Brown issued a series of executive orders in response to the emergency posed by COVID-19, aimed at stemming the tide of the virus. *Id.*

In response to the rising number of COVID-19 cases, Governor Brown issued EO 20-12 on March 23, 2020 "to protect the health and lives of Oregonians, particularly those at highest risk and to help avoid overwhelming local and regional healthcare capacity." EO 20-12. Among other things, EO 20-12 provided:

> Pursuant to ORS 433.441(3)(a), (b), (d), and (f), ORS 401.168(1), and ORS 401.188(1) to (3) and effective 12:01 a.m. on March 24, 2020, I prohibit the following business, for which close personal contact is difficult or impossible to avoid:

> Amusement parks; aquariums; arcades; art galleries (to the extent that they are open without appointment); barber shops and hair salons; bowling alleys; cosmetic stores; dance studios; esthetician practices; fraternal organization facilities; furniture stores; gyms and fitness studios (including climbing gyms); hookah bars; indoor and outdoor malls (i.e., all portions of a retail complex containing stores and restaurants in a single area); indoor party places (including jumping gyms and laser tag); jewelry shops and boutiques (unless they provide good exclusively through pickup or delivery service); medical spas, facial spas, day spas, and non-medical massage therapy services; museums; nail and tanning salons; non-tribal card rooms; skating rinks; senior activity centers; ski resorts; social and private clubs; tattoo/piercing parlors; tennis clubs; theaters; yoga studios; and youth clubs.

EO 20-12, *available at* https://www.oregon.gov/gov/admin/Pages/eo_20-12.aspx (last accessed November 3, 2021).

The restrictions of EO 20-12 did not apply to cosmetology services that are "provided as part of the health and safety of those living in senior housing and long term care setting," which were "permitted to operate under current facility contracts while adhering to guidance and policies on screening, social distancing, personal protection equipment and sanitization guidelines that the facility has in place." Compl. ¶ 40.[1]

Plaintiffs were subject to EO 20-12. Compl. ¶ 39. Consistent with EO 20-12, Plaintiffs stopped their operations on March 24, 2020. *Id.* at ¶ 45. On May 2, 2020, Graham decided she would no longer comply with EO 20-12. *Id.* at ¶ 54. On May 3, 2020, Graham announced on social media that Glamour would reopen on May 5, 2020. *Id.* at ¶ 57. Plaintiffs planned reopening was reported in the news media on May 4, 2020. *Id.* at ¶ 59.

---

[1] This exception is not contained in the text of EO 20-12, but Plaintiffs allege that the exception existed as part of EO 20-12 and the Court accepts that allegation for purposes of a motion to dismiss.

On May 4, 2020, a representative of the Oregon Occupational Safety and Health Administration ("OSHA") notified Plaintiffs that they might be subject to a fine if they went forward with the reopening. Compl. ¶ 61. Plaintiffs allege that the OSHA representative never returned to Glamour. *Id.* at ¶ 63. Plaintiffs do not allege that they were ever fined or sanctioned by OSHA.

Plaintiffs went forward with the planned reopening on May 5, 2020 at an event attended by hundreds of people and covered by the news media. Compl. ¶ 64. Governor Brown made public comments critical of Plaintiffs' reopening. *Id.* at ¶ 69.

On May 5, 2020, Plaintiffs received a notice from the City of Salem "suggesting that Glamour may be in violation of its lease, and therefore may be in default of Glamour's lease with the city of Salem." Compl. ¶ 65. The City of Salem never took action against Plaintiffs. *Id.* at ¶ 66. The City of Salem is not a party to this action.

On May 6, 2020, Plaintiffs received a letter from the Oregon state agency that licenses Plaintiffs. Compl. ¶ 67. The letter threatened Plaintiffs with civil penalties, license forfeiture, and criminal penalties for Plaintiffs' failure to comply with EO 20-12. *Id.* The Complaint does not allege that Plaintiffs were ever penalized by the licensing agency.

On May 6, 2020, DHS received an anonymous complaint concerning Graham and her children. Compl. ¶ 71. Joel Baxter received the complaint as the DHS call screener. *Id.* at ¶¶ 71, 75. Baxter consulted with his supervisor, Ronika Ferguson. *Id.* at ¶ 75. The case was assigned to DHS caseworker Omar Ruiz. *Id.* at ¶ 76. On May 8, 2020, Ruiz contacted Graham concerning the report and on May 11, 2020,

Ruiz interviewed Graham and her family. *Id.* at ¶¶ 77-78. Following the interview, Ruiz found that the complaint was "unfounded/unsubstantiated" and closed the investigation. *Id.* at ¶ 79. The Complaint does not allege that any further action was taken against Graham or her family by DHS.

On May 14, 2020, Governor Brown issued EO 20-25, which superseded EO 20-12 and instituted a phased re-opening of closed businesses aimed at "balanc[ing] important health outcomes with the need to restore and strengthen Oregon's social and economic wellbeing." EO 20-25, *available at* https://www.oregon.gov/gov/admin/Pages/eo_20-25.aspx (last accessed November 1, 2021).

Plaintiffs filed this action on December 18, 2020 in Marion County Circuit Court and Defendants removed the case to this Court on January 28, 2021. ECF No. 1.

## DISCUSSION

Plaintiffs brings a claim for violation of civil rights pursuant to 42 U.S.C. § 1983. This first claim is divided into five counts alleging (1) violation of Plaintiffs' procedural due process rights against Governor Brown and the State of Oregon; (2) violation of Plaintiffs' equal protection rights against Governor Brown and the State of Oregon; (3) retaliation for exercise of First Amendment rights against all Defendants; (4) violation of Plaintiffs' substantive due process rights against all Defendants; (5) and an unlawful taking in violation of the Fifth and Fourteenth Amendment against Governor Brown and the State of Oregon. Plaintiffs' second

claim for relief alleges "intentional or negligent infliction of emotional distress" on behalf of Graham against the individual Defendants. Plaintiffs' third claim alleges abuse of process and wrongful use of civil proceedings against all Defendants. Plaintiffs' fourth claim seeks a declaratory judgment that Governor Brown and the State of Oregon violated Article I, section 18 of the Oregon Constitution and that all Defendants violated Article I, section 20 of the Oregon Constitution. Plaintiffs' fifth and final claim alleges a qualifying taking under ORS 433.441(6) against the State of Oregon.

In their Motion, Defendants assert that Plaintiffs claims for declaratory and injunctive relief are moot. Defendants also move to dismiss Plaintiffs' claims for violation of procedural and substantive due process rights, violation of equal protection rights, impermissible takings, negligent infliction of emotional distress, and qualified deprivation of property under ORS 433.441(6). Defendants also move to dismiss the claims against individual Defendants Gaston, Baxter, Ferguson, Ruiz, and Donaldson. In the alternative, Defendants move to substitute the State of Oregon in place of all individual Defendants on Plaintiffs' state law claims.

As a preliminary matter, Plaintiffs concede to dismissal of their claims for impermissible taking under the federal and state constitutions (Count 5 of Plaintiffs' First Claim and Count 1 of Plaintiffs' Fourth Claim); their claim for negligent infliction of emotional distress (Second Claim); and their claim for a qualified deprivation of property under ORS 433.441(6) (Fifth Claim). The Court accepts Plaintiffs' concessions and those claims are DISMISSED.

## I.    Mootness

As noted, EO 20-12 was superseded by EO 20-25 on May 14, 2020 and had, therefore, ceased to be in effect for more than six months at the time this case was filed. Defendants contend that Plaintiffs' claims for declaratory and injunctive relief are therefore moot.

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). It is not enough that a case presents a live controversy when it is filed. *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 461 (2007). An actual controversy must exist at all stages of federal court proceedings. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). This means that, at all stages of the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant [that is] likely to be redressed by a favorable judicial decision." *Id.* (internal quotation marks and citation omitted).

"The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (internal quotation marks and citation omitted). "[T]he judicial branch loses its power to render a decision on the merits of [a] claim," *Nome Eskimo Cmty. v. Babbitt*, 67 F.3d 813, 815 (9th Cir. 1995), when a federal court can no longer effectively remedy a "present controversy" between the parties, *Doe No. 1*

*v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012) (internal quotation marks and citation omitted).

Plaintiffs have raised issues of voluntary cessation and "capable of repetition, yet evading review" as bases for finding that the challenged restrictions are not moot, arguing that Defendants might reimpose the challenged restrictions. With respect to voluntary cessation, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued," and such a defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Pierce v. Ducey*, 965 F.3d 1085, 1090 (9th Cir. 2020) (internal quotation marks and citation omitted).

The exception for cases that are "capable of repetition, yet evading review" applies when two criteria are met: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Wisconsin Right to Life*, 551 U.S. at 462. This exception applies only in "extraordinary cases." *W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (internal quotation marks and citations omitted).

In this case, the challenged executive order was superseded approximately seven months before Plaintiffs filed their case and has not been reimposed. The advent of the COVID-19 vaccines and the high rate of vaccination in Oregon make another such shutdown unlikely. Additionally, Defendants have presented evidence

that Plaintiffs have relocated to another state and stopped doing business in Oregon. Plaintiffs would not, therefore, be subject to any future shutdown orders issued by the Oregon government. The Court therefore grants Defendants' motion and dismisses Plaintiffs' claims for injunctive and declaratory relief with leave to amend. In amending the Complaint, Plaintiffs should allege facts showing that they are likely to subject to any future orders closing hair salons in Oregon.

## II. Federal Claims

As relevant to the present motion, Plaintiffs bring claims under 42 U.S.C. § 1983 alleging violation of their due process and equal protection rights. Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

### A. Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." *United States v. Guillen-Cervantes*, 748 F.3d 870, 872

(9th Cir. 2014).    Here, Plaintiffs allege violation of both their procedural and substantive due process rights.

### 1. Procedural Due Process

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008).  To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) a lack of adequate process. *Id.* at 1090.

In this case, Plaintiffs appear to base their procedural due process claim on their cessation of business between March 24, 2020 and May 5, 2020 pursuant to EO 20-12.  However, "laws of general applicability affecting a broad geographic area" do not ordinarily implicate individual procedural due process concerns.  *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 968-70 (9th Cir. 2003); *Mendez v. City of Boise*, 845 F. App'x 636, 637 (9th Cir. 2021).  "General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard," and "[t]heir rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule."  *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915); *see also Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994) (In cases involving laws of general applicability, due process is satisfied when the governmental body "performs its responsibilities in the

manner normally prescribed by law."); *Underwood v. City of Starkville*, ___F. Supp.3d___, CIVIL ACTION NO. 1:20-CV-00085-GHD-DAS, 2021 WL 1894900, at *6 (N.D. Miss. May 11, 2021) ("It would be impractical—if not nonsensical—to allow every individual member of the public to voice their opinion directly and personally before a rule of general applicability is put into effect, particularly during a time of crisis like [the COVID-19 pandemic.]").

Although Plaintiffs object that EO 20-12 was not a "law," the Ninth Circuit has held that "[i]n determining when the dictates of due process apply . . . we find little guidance in formalistic distinctions between 'legislative' and 'adjudicatory' or 'administrative' government actions," and "the character of the action, rather its label, determines whether those affected by it are entitled to constitutional due process." *Harris v. Cnty. of Riverside*, 904 F.2d 497, 501-02 (9th Cir. 1990); *see also Curlott v. Campbell*, 598 F.2d 1175, 1181 (9th Cir. 1979) ("At the outset we doubt very much that procedural due process prior to a reduction in benefits is required when an agency made a broadly-applicable, legislative-type decision." (citing *Bi-Metallic*, 239 U.S. at 441)). "The proper remedy in those circumstances is judicial review after promulgation of the new rule." *Curlott*, 598 F.2d at 1181. Of note, the Oregon Supreme Court has upheld EO 20-12, and other COVID-19-related executive orders issued in early 2020, as a proper exercise of the state's police powers in the face of a public health emergency. *Elkhorn Baptist Church v. Brown*, 366 Or. 506, 523-536 (2020).

In this case, Plaintiffs were subject to an executive order that affected thousands of businesses, ranging from rock gyms to massage parlors, across the entire state and the Court notes that similar shutdowns were instituted by states across the country. Under *Bi-Metallic*, such governmental acts do not ordinarily implicate any due process concerns. Nor do Plaintiffs allege that they ever allege that they sought a hearing related to EO 20-12, either before or after it went into effect.

In their response brief, Plaintiffs appear to assert that their due process claim stems from the loss of licensing, but the Complaint does not allege that Plaintiffs' licenses were ever revoked, nor does it allege that Plaintiffs were fined or otherwise penalized for refusing to comply with EO 20-12. The Complaint does not allege that any of the named Defendants took any tangible steps towards revoking any license held by Plaintiffs.

Accordingly, the Court concludes that Plaintiffs have failed to state a claim for violation of their procedural due process rights and that claim is therefore DISMISSED.

### 2. Substantive Due Process

"The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that . . . interferes with rights implicit in the concept of ordered liberty." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007) (internal quotation marks and citation omitted, alterations in original). "Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Sylvia Landfield Tr. v. City of*

*Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013).  Only "the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks and citation omitted). "To constitute a violation of substantive due process, the alleged deprivation must shock the conscience and offend the community's sense of fair play and decency." *Sylvia Landfield*, 729 F.3d at 1195 (internal quotation marks and citation omitted). The Supreme Court has held "that the 'shock the conscience' standard is satisfied where the conduct was intended to injure in some way unjustifiable by any government interest or in some circumstances if it resulted from deliberate indifference." *Rosales-Mireles v. United States*, ___U.S.___, 138 S. Ct. 1897, 1906 (2018) (internal quotation marks and citation omitted).

The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).  The Supreme Court has established "a threshold requirement—that a challenged state action implicate a fundamental right—before requiring more than a reasonable relation to a legitimate state interest to justify the action." *Id.* at 722.

In this case, Plaintiffs allege that their substantive due process rights were infringed when EO 20-12 caused them cease operations between March 24, 2020 and May 5, 2020.  Although there is a generalized right to pursue work under the Due Process Clause, the Supreme Court has "has never held that the right to pursue work is a fundamental right." *Sagana v. Tenorio*, 384 F.3d 731, 743 (9th Cir. 2004).  Any

restriction of that right would therefore be subject to rational basis review. *See, e.g.,*
*Witt v. Dep't of the Air Force*, 527 F.3d 806, 817 (9th Cir. 2008) ("Substantive due
process cases typically apply strict scrutiny in the case of a fundamental right and
rational basis review in all other cases.").

Under rational basis review, state conduct is presumed valid and will be
upheld so long as it is "rationally related to a legitimate state interest." *City of
Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). "Governmental action is
rationally related to a legitimate goal unless the action is clearly arbitrary and
unreasonable, having no substantial relation to public health, safety, morals, or
general welfare." *Sylvia Landfield*, 729 F.3d at 1193 (internal quotation marks and
citation omitted). Plaintiffs "shoulder a heavy burden" of showing that the
government "could have had no legitimate reason for its decision." *Halverson v.
Skagit Cnty.*, 42 F.3d 1257, 1262 (9th Cir. 1994) (internal quotation marks and
citation omitted).

In this case, the Court has no trouble discerning a rational relationship
between mitigating the threat to public health posed by COVID-19 and the
restrictions imposed by EO 20-12. Indeed, the Court notes that the need for and
purpose of the restrictions are spelled out in the text of EO 20-12 itself. And to the
extent that Plaintiffs intended to base this claim on the loss of professional licenses,
the Court once again notes that the Complaint does not allege that Plaintiffs' licenses
were revoked or even that any tangible steps were taken to revoke those licenses.

To the extent Plaintiffs appear to base their substantive due process claim on the DHS investigation of Graham and her family, Compl. ¶ 111, that investigation lasted only long enough for DHS to determine that the anonymous complaint was unsubstantiated before it was closed. Consistent with that determination, DHS took no action against Graham or her family and the investigation did not result in any constitutionally cognizable deprivation.

The Court therefore concludes that Plaintiffs have failed to state a claim for violation of their substantive due process rights.

### B. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne*, 473 U.S. at 439 (internal quotation marks and citation omitted). To prevail on an equal protection claim, a plaintiff must "show that a class that is similarly situated has been treated disparately." *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020) (internal quotation marks and citation omitted). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest," but heightened standards of review apply when suspect classifications like race, alienage, or national origin, are implicated or "when state laws impinge on personal rights protected by the Constitution." *City of Cleburne*, 473 U.S. at 440.

In this case, Plaintiffs contend that have been treated differently from the hair care providers who operate within senior and long-term care facilities and who were not subject to the requirements of EO 20-12. As no suspect classification or fundamental right has been implicated, rational basis review will apply.

The rational basis review test is functionally the same under substantive due process and the Equal Protection Clause. *Gamble v. City of Escondido*, 104 F.3d 300, 307 (9th Cir. 1997). Under the Equal Protection Clause, if there is no suspect class at issue, a policy "need only rationally further a legitimate state purpose to be valid." *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 291 (1984) (internal quotations omitted). The Equal Protection clause will be satisfied is there is a "plausible policy reason for the classification," the government decisionmaker relied on facts, that "may have been considered to be true," and "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992). "Given the standard of review, it should come as no surprise that the [courts] hardly ever strike down a policy as illegitimate under rational basis scrutiny." *Trump v. Hawaii*, ___U.S.___, 138 S. Ct. 2392, 2420 (2018).

In this case, Defendants have articulated a plausible policy reason for treating hair care providers who operate within care facilities differently from those who serve the general public during a public health crisis involving a highly transmissible virus. The reason for the exception is not so attenuated as to be irrational or arbitrary. The

Court therefore concludes that Plaintiffs have failed to state a claim for violation of their equal protection rights.

In their Response, Plaintiffs appear to assert that their equal protection claim is based on a "class of one" theory of equal protection. "The Supreme Court has recognized that an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been singled out as a so-called 'class of one.'" *Gerhart v. Lake Cnty.*, 637 F.3d 1013, 1021 (9th Cir. 2011) (internal quotation marks and citation omitted). To succeed on a "class of one claim," a plaintiff must show that the defendant (1) intentionally (2) treated the plaintiff differently from other similarly situated, (3) without a rational basis. *Id.* at 1022.

As with Plaintiffs' apparent class-based claim, this "class of one" theory is based on the distinction between Plaintiffs and cosmetologists who provide services within long-term care facilities. And as with the class-based claim, there is a rational basis for the distinction between low-volume hair care professionals working in care facilities and cosmetologists who serve the general public.

Whether considered as a class-based claim or under a "class of one" theory, Plaintiffs have failed to state a claim for violation of their equal protection rights.

### III.    Article I, Section 20 of the Oregon Constitution

Plaintiffs bring a claim for declaratory relief alleging a violation of their rights under the Article I, section 20 of the Oregon Constitution, which provides "No law shall be passed granting to any citizen or class of citizens privileges, or immunities,

which, upon the same terms, shall not equally belong to all citizens." Or. const. art I, § 20. Because the "original target of this constitutional prohibition was the abuse of governmental authority to provide special privileges or immunities *for* favored individuals or classes, not discrimination *against* disfavored ones," the Oregon Supreme Court has referred to Article I, section 20 as the "antithesis of the Fourteenth Amendment's equal protection clause." *Hale v. Port of Porland*, 308 Or. 508, 524-25 (1989) (internal quotation marks and citation omitted). However, "like the fourteenth amendment, article I, section 20 of the Oregon Constitution prohibits disparate treatment of groups or individuals by virtue of 'invidious' social categories." *Hewitt v. SAIF*, 294 Or. 33, 43 (1982).

To prevail on a claim for violation of Article I, section 20, a plaintiff must show that (1) he is a member of a group that is a "true class," (2) that the challenged law grants another group a privilege or immunity that the plaintiff's group has not been granted, (3) the differential treatment is based on characteristics the group has that are apart from the statute, and (4) the differential treatment has no rational basis. *State v. Goacher*, 303 Or. App. 783, 788 (2020).

"As used in Article I, section 20, case law, the term 'class' takes on special meaning; only laws that disparately treat a 'true class' may violate that section of the constitution." *Tanner v. Oregon Health and Sciences Univ.*, 157 Or. App. 502, 520 (1998). A "true class" is "not defined by any statute nor by the practices that are the subject of plaintiffs' challenges." *Id.* at 523-24. "In attempting to describe precisely what is meant by a 'true class,' the cases draw a distinction between classes that are

created by the challenged law or government action itself and classes that are defined

in terms of characteristics that are shared apart from the challenged law or action."

*Id.* at 520-21; *see also Nakashima v. Oregon State Bd. of Educ.*, 344 Or. 497, 522

(2008) ("[T]o complain that a statute accords a special privilege or status to others, or

treats them disparately without legitimate reason, the persons complaining must

qualify as a class who share common characteristics that exist apart from the criteria

on which the governmental choice is made." (citation omitted)).  "Examples of true

classes include gender, ethnic background, legitimacy, past or present residency, and

military service." *Tanner*, 157 Or. App. at 521.

> The standard example of a nontrue class, drawn from the Supreme
> Court's decision in [*State v. Clark*, 291 Or. 231 (1981)], is the
> classification created by a statute that imposes a filing deadline for filing
> a petition for review.  Such legislation creates two classes of persons: (1)
> those who timely file petitions for review, and (2) those who do not.  Both
> are "classes" of persons, at least in the colloquial sense of groups having
> something in common.  But in the absence of the statute, they have no
> identity at all.  Legislation that disparately affects such "classes" does
> not violate Article I, section 20, because of the essentially circular nature
> of the argument: The legislation cannot disparately affect a class that
> the legislation itself creates.

*Tanner*, 157 Or. App. at 521.

In this case, the complained-of classification is between cosmetologists

operating within care facilities, who were not subject to EO 20-12, and cosmetologists

who serve the general public, who were.  This is a classic example of a non-true class

because the difference between the two groups is created by the challenged executive

order.  In the absence of a true class, Plaintiffs' claim under Article I, section 20 fails.

But even if a "true class" existed, the distinction is supported by a rational basis for

the same reasons discussed in the previous section concerning Plaintiffs' claim under the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs' claim for declaratory relief under Article I, section 20 of the Oregon Constitution is therefore dismissed.

## IV.  Individual Defendants

As noted, Plaintiffs have brought claims against a number of individual Defendants—Gaston, Baxter, Ferguson, Ruiz, and Donaldson.

Gaston and Donaldson are the heads of Oregon state agencies and, to the extent that any allegations are made about either of them, they appear to seek to hold Gaston and Donaldson liable under a theory of respondeat superior. "There is no *respondeat superior* liability under section 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted). The Complaint does not allege the necessary facts to establish liability for either Gaston or Donaldson under § 1983.

The claims against Baxter, Ferguson, and Ruiz are all related to the brief DHS investigation of Graham. The allegations amount to the following: Baxter received an anonymous complaint about Graham and conferred with his supervisor Ferguson before they referred the case to Ruiz. Ruiz interviewed Graham and her family, promptly determined that the anonymous complaint was bogus, and closed the case.

DHS took no other action against Graham or her family.    These threadbare allegations are insufficient to state a claim against Baxter, Ferguson, or Ruiz.

The Court therefore DISMISSES all claims against Baxter, Ferguson, Ruiz, Gaston, and Donaldson.

## CONCLUSION

Defendants' Motion to Dismiss, ECF No. 2, is GRANTED.    The Complaint is DISMISSED with leave to amend.    Should Plaintiffs wish to file an amended complaint, they have shall have thirty (30) days in which to do so.

It is so ORDERED and DATED this ____4th____ day of November 2021.


 /s/Ann Aiken_____
ANN AIKEN
United States District Judge